Sue SCHRAMEK and Stacy Schramek, by Robert
E. Sutton, her guardian ad litem, Plaintiffs-
Appellants,†

v.

Michael O. BOHREN, Thomas R. Schramek,
Robert Schramek, Joseph Greco and Steven
J. May, Defendants-Respondents.

Court of Appeals

*No. 87–1831. Submitted on briefs April 26, 1988.—Decided
July 12, 1988.*

(Also reported in 429 N.W.2d 501.)

† Petition to review denied. CALLOW, J., took no part.

695

For the plaintiffs-appellants the cause was submitted on the briefs of *Sutton & Kelly,* by *Robert E. Sutton,* of Milwaukee.

For the defendant-respondent Michael O. Bohren. the cause was submitted on the briefs of *Godfrey, Trump & Hays,* by *Thomas W. Godfrey* and *M. Susan Maloney,* of Milwaukee.

For the defendants-respondents Thomas R. Schramek and Robert Schramek the cause was submitted on the briefs of *Schulz, Schapekahm & Eich, S.C.* by *Penelope D. Hillemann,* of Milwaukee.

For the defendant-respondent Joseph Greco, the cause was submitted on the briefs of *George E. Rice,* Milwaukee County Corporation Counsel, with Assistant Corporation Counsel *John Jorgensen,* of counsel, of Milwaukee.

For the defendant-respondent Steven J. May the cause was submitted on the briefs of *Grant F. Langley,* Milwaukee City Attorney, with Assistant City Attorney *Scott G. Thomas,* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Sue Schramek and her daughter, Stacy, by her guardian ad litem (collectively, Sue) appeal from an order dismissing their com-

699

plaint against Thomas R. Schramek, Robert Schramek, Michael O. Bohren, Joseph Greco, and Steven J. May. Sue's complaint sets forth six causes of action: (1) a violation of rights protected by 42 U.S.C. sec. 1983; (2) assault and battery by Thomas; (3) intentional infliction of emotional distress; (4) invasion of privacy; (5) malicious prosecution and abuse of process; and (6) that sec. 813.12, Stats., is unconstitutional on its face and in its application.

Sue essentially raises two issues of error: whether the trial court improperly sustained the constitutionality of sec. 813.12, Stats., and whether the trial court erred as a matter of law in dismissing all of her causes of action. We conclude the following: (1) because the trial court properly sustained the constitutionality of sec. 813.12, we affirm as to the statute's constitutionality; (2) because the trial court improperly dismissed the assault and battery action against Thomas, we reverse and remand; and (3) because the remaining alleged claims constitute a collateral attack on the injunctive order of the family court commissioner; we reverse and remand with directions.

On August 1, 1986, Thomas, by his counsel, Bohren, pursuant to sec. 813.12(3), Stats., petitioned for and obtained a temporary restraining order (TRO) against his wife, Sue, based on her alleged domestic abuse of him. That same day, May, a city of Milwaukee police officer, served on Sue the TRO and the notice of the injunction hearing. The order and notice set August 8 as the hearing date for the application for an injunction.

On August 8, both parties were present and represented by counsel. Joseph A. Greco, assistant family court commissioner, presided over the hearing. Commissioner Greco found that there were reasonable

grounds to believe that Sue had engaged in or, based upon prior conduct, might engage in, domestic abuse of Thomas as defined in sec. 813.12(1)(a), Stats. He ordered that Sue (1) avoid the couple's residence; (2) avoid contacting or causing any person other than a party's attorney to contact Thomas unless he consents in writing; and (3) arrange visitation with their minor child, Stacy, through a mutually agreed-upon third party. The injunction was to remain in effect until August 8, 1988.

Sue sought circuit court review of Commissioner Greco's order. The petition for review also included a constitutional challenge to the domestic abuse statute's injunctive provisions. The court ruled that it was without jurisdiction to review the commissioner's decision to grant the injunction. Sue appealed that decision to this court. We reversed, declaring that the trial court did have jurisdiction, and remanded for consideration of Sue's petition for review. That review is still pending.

While Sue's appeal of the trial court's decision was pending in this court, she filed the present complaint now under review. The trial court, after hearing motions to dismiss, declared sec. 813.12, Stats., constitutional, and as a result granted the motions dismissing all of Sue's causes of action. She now appeals from that order.

We first address the constitutionality of sec. 813.12, Stats. Sue's constitutional challenge is multifaceted and consists of five parts: (1) inadequate notice of hearing and denial of a pre-TRO hearing; (2) denial of the right to a jury; (3) vagueness; (4) overbreadth; and (5) denial of equal protection.

In passing on the constitutionality of a statute, we recognize that there is a strong presumption that a legislative enactment is constitutional. *State v. Cissell,* 127 Wis. 2d 205, 214, 378 N.W.2d 691, 695 (1985), *cert. denied,* 475 U.S. 1126 (1986). The party advancing a constitutional challenge bears an awesome burden.

> It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.

*State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

We first discuss the history and procedural methodology of sec. 813.12, Stats. In 1979, our legislature acknowledged that domestic abuse was a serious statewide social concern which necessitated a comprehensive and informed response. Sec. 1, ch. 111, Laws of 1979. It recognized the critical need for specialized assistance, not only to the victims of domestic abuse but also to the abusers. More resources had to be marshaled and new methods formulated to meet the challenge of this tragic social phenomenon. *Id.* As an additional means of alleviating the problem, the legislature enacted sec. 813.12, Stats. *See* sec. 19, 1983 Wis. Act 204.

To trigger the protective provisions of sec. 813.12, Stats., an individual seeking help must file a petition alleging that the respondent engaged in domestic abuse as defined in the statute. *See* Sec. 813.12(1), (2) and (5)(a). Included within this definition is the intentional infliction of physical pain, physical injury or illness. Sec. 813.12(1)(a)1.

A two-part procedure is set forth by the statutes. After the petition is served upon the respondent, the petitioner may request a TRO. Sec. 813.12(2m), Stats. The TRO shall be issued if the petitioner submits a petition alleging certain elements and a judge or a family court commissioner finds reasonable grounds to believe that the respondent has engaged in, or may engage in, domestic abuse of the petitioner. Sec. 813.12(3). This order can be issued without notice to the respondent. Sec. 813.12(3)(b).

The order, except under certain conditions delineated in sec. 813.12(3)(am), Stats., shall require the respondent to avoid the petitioner's residence and to avoid any direct or indirect contact with the petitioner, except through an attorney, unless the petitioner consents in writing. Sec. 813.12(3)(a). If the court issues a TRO, the order shall set forth the date for the injunction hearing. Sec. 813.12(2m). The TRO remains in effect until a hearing is held on the merits of the requested injunction. Sec. 813.12(3)(c). The hearing must be held within seven days after the TRO is issued, unless an extension is consented to by the parties, or upon a finding that the respondent was not served with a copy of the TRO despite due diligence by the petitioner. *Id.*

Section 813.12(4), Stats., concerns the issuance of an injunction. The judge or family court commissioner may grant an injunction, if the petitioner (1) files a

petition alleging the elements set forth under 813.12(5)(a); (2) serves notice of the time for a hearing on the respondent; and (3) if, after a hearing, the judge or family court commissioner determines that there are reasonable grounds to believe that the respondent engaged in, or may engage in, domestic abuse of the petitioner. Sec. 813.12(4)(a)1–3. An injunction may be granted which orders the respondent to avoid the petitioner's residence, with certain exceptions, and any direct or indirect contact, except through an attorney, unless the petitioner consents to that contact in writing. Sec. 813.12(4)(a).

## INADEQUATE NOTICE OF HEARING AND NO PRE-TRO HEARING

█

Sue's first challenge to the constitutionality of the statute rests on two assertions: inadequate notice of the injunction hearing and the nature of the charge, and no hearing prior to the issuance of the *ex parte* TRO. When the rights of a person are affected by judicial or quasi-judicial decree, adequate due process requires that the notice must reasonably convey information about the proceedings so that the respondent can prepare a defense or make objections. *In re Estate of Fessler,* 100 Wis. 2d 437, 447, 302 N.W.2d 414, 419 (1981).

Section 813.12(5)(a), Stats., provides that the petitioner shall allege facts sufficient to show: (1) the name of the petitioner and that the petitioner is the alleged victim; (2) the name of the respondent and that the respondent is an adult; and (3) the respondent engaged in or, based upon prior conduct, may engage in domestic abuse of the petitioner. To issue a TRO,

sec. 813.12(3)(a)1 and 2 requires the petitioner to assert sufficient facts and circumstances to permit a judge or family court commissioner to find reasonable grounds to believe that the respondent has engaged in or, based on prior conduct, may engage in domestic abuse of the petitioner. From the record, we further note that the form which the petitioner is to complete requires a statement of "what happened, when, where, who did what to whom."

Thomas, in his petition, set forth a factual basis for issuing a TRO. In the part of the petition for TRO and/or injunction entitled "State what happened when, where, who did what to whom," Thomas stated, "Respondent came home [and] became enraged, pushed [and] shoved and scratched me with her nails on my face. She also pushed me in the hall. About one hour later, after beginning to drink alcohol, she pushed on the bedroom door [and] hit my left eye with the door." The facts asserted in the petition formed the basis for his claim of domestic abuse, placed Sue on notice of his claim, and provided her with circumstances to formulate a defense or raise objections. This notice was sufficient for due process purposes.

Sue raised the same challenge of inadequate notice in the trial court, where it was rejected based on *Bachowski v. Salamone,* 139 Wis. 2d 397, 407 N.W.2d 533 (1987). *Bachowski* upheld the constitutionality of sec. 813.125, Stats. *Id.* at 414–15, 407 N.W.2d at 540. From a review of the trial court's decision, it is reasonable to deduce that the trial court perceived a parallel between sec. 813.125 (the harassment statute), and sec. 813.12, Stats. (the domestic abuse statute), and thereby upheld the constitutionali-

ty of the latter and its application to the particular facts of this case.

In *Bachowski,* as here, the statute was attacked for a violation of due process notice requirements. The procedural mechanisms of the two statutes are substantially similar. After the filing of a petition and the presentation of reasonable grounds, a judge may issue a TRO. Sec. 813.125(3), Stats. Each statute requires that a hearing on the issue of the requested injunction occur within seven days of the issuance of the TRO. *Id.;* sec. 813.12(3), Stats. Likewise, as a prerequisite to granting an injunction, in both statutes the trial court must find that the petitioner has served upon the respondent a copy of the TRO and notice of the time for the hearing on the issuance of the injunction. Secs. 813.125(4) and 813.12(4).

As for the adequacy of notice, the *Bachowski* court acknowledged that no statutory provision had been made for a minimum notice period prior the injunction hearing, but concluded that in order to satisfy due process requirements, the notice must be "reasonable," i.e. reasonably calculated to inform the person of the pending proceeding and to afford the person an opportunity to object and defend his or her rights. *Bachowski,* 139 Wis. 2d at 405, 407 N.W.2d at 536. The court concluded that the procedures to provide notice set forth in sec. 813.125, Stats., were sufficient to meet due process requirements. *Id.* at 406, 407 N.W.2d at 537. We conclude that the notice provisions of sec. 813.12, Stats., are constitutional, based on *Bachowski*'s conclusion that nearly identical notice provisions were constitutional. Furthermore, the court in *Bachowski* in effect concluded that Salamone's three-day notice was reasonable. *Id.* at 403–06, 407 N.W.2d at 535–37. If a three-day notice

was reasonable, then certainly a seven-day notice is also reasonable.

Sue claims constitutional error in not being allowed to contest the validity of a TRO before it is issued. We disagree.

In *Lossman v. Pekarske,* 707 F.2d 288 (7th Cir. 1983), a father and his children alleged in a civil rights action that county welfare and law enforcement officers in Wisconsin had deprived them of liberty without due process by removing the children from the father's custody without good cause. The removal of the children was pursuant to sec. 48.19(1), Stats., which seeks to protect the welfare of the children and to authorize their removal from dangerous circumstances when necessary. *See* sec. 48.19(1)(c) and (d)5. In reviewing the nature of the proceedings held under sec. 48.19(1)(c), the court declared that although the hearing was *ex parte,* "there is no denial of due process in refusing to grant a full adversary hearing before taking away property or liberty, so long as such a hearing is provided later (as it was here) and there is justification for the delay. When a child's safety is threatened, that is justification enough for action first and hearing afterward." *Lossman,* 707 F.2d at 291 (citation omitted).

Similarly, sec. 813.12, Stats., protects individuals from domestic abuse. Thomas' safety was in jeopardy. The action taken for his protection was an *ex parte* hearing which resulted in a TRO. The statute provides for a prompt post-deprivation hearing, which in this case, as in *Lossman,* demonstrated the justification for initially issuing the TRO and for delaying the hearing. *See id.* at 291–92. We find no constitutional infirmity

707

in the statutory procedure, or in its present application.

## RIGHT TO A JURY

■

Sue claims that the statute deprives her of the right to a jury's determination. Article I, sec. 5 of the Wisconsin Constitution states that trial by jury is mandatory in "all cases *at law* without regard to the amount in controversy." *Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 88–89, 102 N.W.2d 393, 399 (1960) (emphasis added). The right preserved by this provision is the same right that existed at the time of the adoption of the constitution in 1848. *Id.* at 89, 102 N.W.2d at 399. "Historically, injunctive proceedings have been deemed actions in equity, and must still be regarded as such for the purpose of determining the scope of sec. 5, art. I, notwithstanding the statutory merger of law and equity." *Upper Lakes Shipping, Ltd. v. Seafarers' Int'l Union,* 23 Wis. 2d 494, 503, 128 N.W.2d 73, 77–78 (1964). We conclude that because the TRO and injunction as provided for in sec. 813.12, Stats., are equitable in nature, there is no right to a jury trial under art. I, sec. 5 of the Wisconsin Constitution.

## VAGUENESS

■

Sue next claims that sec. 813.12, Stats., is unconstitutionally vague. To withstand a vagueness challenge, a statute must be sufficiently definite so that potential offenders who wish to follow the law are able to discern when they are approaching the zone of proscribed conduct. *City of Milwaukee v. Wilson,* 96 Wis. 2d 11, 16, 291 N.W.2d 452, 456 (1980). The statute

cannot be so obscure that individuals of ordinary intelligence must guess as to its meaning and disagree as to its applicability. *Id.*

Under sec. 813.12(1)(a), Stats., the prohibited conduct is (1) the intentional infliction of physical pain, physical injury or illness; (2) the intentional impairment of a physical condition; (3) a violation of sec. 940.225(1), (2) or (3), Stats.; or (4) a threat to engage in any of the above conduct. Sue does not favor us with any suggestion as to why the statute is vague and we cannot divine how any reasonable person could guess as to its meaning or disagree on its application. The legislature has defined such conduct with sufficient specificity to meet constitutional requirements. The challenge for vagueness must fall.

## OVERBREADTH

Sue's overbreadth challenge is unpersuasive. "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *Bachowski,* 139 Wis. 2d at 411, 407 N.W.2d at 539. If the statute prohibits conduct which is constitutionally protected, it is void, even if the offender's own conduct is unprotected and could properly be prohibited by a law which was more narrowly drawn. *Wilson,* 96 Wis. 2d at 20, 291 N.W.2d at 458. The evil to be avoided is the prohibition of conduct which includes constitutionally protected activity and the consequent deterrence of that protected activity. *See Bachowski,* 139 Wis. 2d at 411, 407 N.W.2d at 539. Sue claims that the statute

restricts her free speech rights. She states that she would be prohibited from "verbally communicating even political views and, of course, could not enter the premises for such purposes." Section 813.12, Stats., is not directed at free speech but at the suppression of physical abuse or the threat thereof. Even if the sanctions of the statute indirectly prohibit speech, the state can ban speech directed primarily at those who are unwilling to receive it. *See Frisby v. Schultz,* 108 S. Ct. 2495, 2504 (1988). "[I]ndividuals are not required to welcome unwanted speech into their own homes and ... the government may protect this freedom." *Id.* at 2502. We further note that Sue has the right to contact Thomas through an attorney and therefore she still has a channel available to permit her to communicate with him. *See id.* at 2504.

## EQUAL PROTECTION

Lastly, a word about Sue's assertion that sec. 813.12, Stats., denies her equal protection. She argues that those charged under sec. 813.12, Stats., "are stripped of the rights to which defendants charged with battery under the criminal code are entitled solely because of their status as adult family members or household members."

The appropriate standard for review of a classificatory scheme is whether there is a rational basis for the classification. *See Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370–71, 293 N.W.2d 504, 511, *cert. denied,* 449 U.S. 1035 (1980). The challenged classification must rationally relate to a legitimate state interest. "The basic test is not whether some inequality results from the classification, but whether there exists any

reasonable basis to justify the classification." *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734, 742 (1974) (footnote omitted). If any state of facts can reasonably be conceived to justify a statutory discrimination, it will not be set aside. *Sambs,* 97 Wis. 2d at 371, 293 N.W.2d at 511. If the legislative body has not set forth its rationale for creating a classificatory scheme

> it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow.

*Id.* at 371, 293 N.W.2d at 512.

As previously indicated, the state legislature created protective measures for those individuals who, as a member of either an adult family or a household, were domestically abused by other family or household members. Only individuals within precise settings who were victims of clearly defined physical abuse were deemed to receive protection by state action. The legislature sought to help both the abused and the abusers. The uniqueness of this relationship is obvious. Because of the sensitive nature of the circumstances in which this conduct arises, the procedural mechanisms were created to alleviate the inherent problem of preventing further abuse of family or household members. There is a reasonable basis for the legislature to create special procedures for these circumstances, which differ from battery where the

711

victim and the accused are either strangers or not members of the same family or household. Based on the above, there is a rational basis for the legislature's enactment of the protections afforded domestically abused individuals. This constitutional challenge also fails.

In summary, we conclude that sec. 813.12, Stats., both on its face and in its application in this case, does not violate the constitutional guarantees of due process, right to a jury trial, or equal protection.

We shall now examine the remaining five causes of action. Sue's second cause of action alleges assault and battery on the part of Thomas. In paragraph 8 of her complaint, she avers that "On ... June 2, 1986 ... Thomas R. Schramek assaulted and battered the plaintiff by striking her with his fists about the body and digging his fingernails into her flesh." In paragraph 14, she further asserts, "On ... July 31, 1986 ... Thomas R. Schramek again assaulted and battered the plaintiff by grabbing the arms of the plaintiff and throwing her to the floor."

The trial court did not address this particular claim. In light of the policy of liberal construction of the pleadings, a claim will be dismissed only if it is clear that the plaintiff cannot recover under any condition. *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). We therefore conclude that the facts pleaded reveal an apparent right to recover for assault and battery. Because this cause of action was not dependent on the constitutionality of sec. 813.12, Stats., it should not have been dismissed.

Bohren, Thomas and Robert Schramek contend that Sue's remaining causes of action are based on the premise that the underlying injunction was invalid.

They therefore constitute a collateral attack on the family court commissioner's order, the review of which is still pending in the circuit court.[1] We agree.

A collateral attack is an "attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding prescribed by law and instituted for the purpose of vacating, reviewing, or annulling it." *In re Estate of Boots,* 73 Wis. 2d 207, 215, 243 N.W.2d 225, 229 (1976) (quoting with approval, *Zrimsek v. American Auto. Ins. Co.,* 8 Wis. 2d 1, 3, 98 N.W.2d 383, 384–85, [1959]). When Sue sought review of the family court commissioner's injunctive order, the circuit court rejected the petition on the ground that it had no jurisdiction. On appeal, we ruled to the contrary and remanded the matter to the circuit court for further proceedings. For her to also request consideration in separate proceedings of any cause of action except assault and battery would be sanctioning a collateral attack on the order of another quasi-judicial body. Sue's only basis for collateral attack is if she had demonstrated fraud in the procurement of the injunctive order. *See Zrimsek,* 8 Wis. 2d at 3, 98 N.W.2d at 385. Fraud has not been demonstrated because Sue has not argued in her briefs on appeal that there was fraud in the order's procurement, nor did she base a cause of action on this ground or ask the trial court to set aside the order for fraud. *See* sec. 806.07, Stats. We therefore reverse as to all claims except the constitutionality of sec. 813.12, Stats., which we affirm, and, pursuant to sec. 752.02,

[1]Thomas and Robert Schramek's brief concedes that "the only cause of action which conceivably survives the ruling on constitutionality is the cause of action for assault and battery."

Stats., remand to the circuit court with the following directions:

1) that case no. 715–986, the case presently on appeal, and case no. 694–841, the petition for review of the family court commissioner's order, be immediately consolidated;

2) that the consolidated case be assigned to the Honorable Patrick T. Sheedy, Branch 5 of the circuit court for Milwaukee county;

3) that a hearing on the petition for review presently pending in Branch 5 be placed at the head of the court's present calendar;

4) that in reference to all of the causes of action except the constitutionality of sec. 813.12, Stats., such proceedings be taken as are proper and appropriate.

*By the Court.*—Order affirmed in part and reversed in part and cause remanded with directions.