Alvin D. BLAZEL, and Others Similarly Situated, Plaintiffs,

v.

The Honorable Ann Walsh BRADLEY, Judge for the Circuit Court of Marathon County, Branch III, in her Official Capacity, Defendant.

No. 87–C–179–C.

United States District Court, W.D. Wisconsin.

Nov. 7, 1988.

James Jannetta, Wausau, Wis., for plaintiffs.

James H. McDermott, Asst. Atty. Gen., Madison, Wis., for defendant.

CRABB, Chief Judge.

This is a civil action brought pursuant to 42 U.S.C. § 1983 in which plaintiffs ask the court to declare unconstitutional Wis.Stat. § 813.12(3)(b), which permits the issuance of *ex parte* temporary restraining orders in domestic abuse actions. The case is before the court on the parties' cross-motions for summary judgment. Jurisdiction is present under 28 U.S.C. §§ 1331 and 1343.

I conclude that Wis.Stat. § 813.12 provides the essential due process protections that are required before the state may constitutionally deprive plaintiffs of the protected liberty and property interests at stake when a temporary restraining order is issued in a domestic abuse action. It is explicit in the statute that judicial participation and a verified petition containing detailed allegations are required before an *ex parte* order may issue and that a prompt post-deprivation hearing must be provided. And in light of the statute's legislative history, it is implicit that *ex parte* orders are to be issued only upon an allegation of risk of imminent and irreparable harm based on personal knowledge.

From the findings of fact proposed by the parties, I find that no genuine dispute exists as to the following material facts.

## FACTS

Plaintiff Alvin Blazel is an adult resident of Wisconsin. Defendant Ann Walsh Bradley is the duly elected Circuit Court Judge of Branch III of the Marathon County Circuit Court in Wausau, Wisconsin.

On March 13, 1987, plaintiff's wife, Donna Blazel, filed a petition for a temporary restraining order and injunction in the Marathon County Circuit Court, Branch III. Pursuant to Wis.Stat. § 813.12(5)(b), she was provided with a simplified form on which to file her petition. The form states that the allegations are made "under oath" and has preprinted responses that the petitioner can check indicating the petitioner's relation to respondent, whether both are adults, and the petitioner's legal interest in his or her residence. The form provides a space for the petitioner to describe the necessity for the order. In this space the form states "The respondent engaged in or might engage in domestic abuse to me because: (The conduct must include an intentional infliction of or threat to inflict physical pain, physical injury or illness; impairment of physical condition; or sexual contact or sexual intercourse without consent, as set forth in s. 940.225(1)(2) or 3, [sic] Wis.Stats.)." The form has a space where the petitioner must describe "what happened, when, where, who did what to whom." The petition then lists the types of protection that may be ordered, including requiring respondent to avoid petitioner's residence or to avoid contacting her, and a line marked "Other." The petitioner is to mark any of the boxes which apply.

In the space provided for a description of abuse Donna Blazel alleged as follows: "2–28–87 he grabbed me by the back of my hair & tried to throw my neck out, which hurts my arthritis. Called Mara. Co. Sheriff's Dept. About Feb. 12, 1987, threw a loaf of bread at me & then hit me in the back of the head with his fist and tried to throw my neck out, called MCSD and signed an abuse complaint."

Donna Blazel marked with an "X" the lines on the pre-printed petition indicating she was requesting that the court immediately issue a temporary restraining order requiring the named respondent to avoid his residence and to avoid contacting petitioner or causing any other person to have contact with her, and directing the sheriff to place her in physical possession of her residence.

On March 13, 1987, the day Donna Blazel filed the petition, defendant issued a temporary restraining order on a pre-printed form, ordering Alvin Blazel to avoid the petitioner's residence, to avoid contacting petitioner or causing any person other than a party's attorney to contact petitioner, and to leave the children in the home. The first two requirements were preprinted and then marked by the judge. The last requirement was typed on a line marked "other." The order provided that it was in effect until the injunction hearing, which a handwritten entry indicated was scheduled for March 19, 1987.

The temporary restraining order was issued without any notice to Alvin Blazel. He first became aware of the matter on March 14, 1987, when he was served with the order.

Alvin and Donna Blazel own their residence jointly.

On March 19, 1987 Donna Blazel failed to appear at the injunction hearing and the action was dismissed. On the same day, Donna Blazel filed a second petition with the Marathon County Circuit Court, again requesting a domestic abuse restraining order. In the petition she repeated the allegations she had made in her first petition and added others about earlier incidents. She checked the boxes indicating that she wished an order requiring the respondent to avoid their residence and to avoid contacting her. In the space entitled "Other" she requested that respondent's family and friends be prevented from contacting her or the children on their property.

On March 19, 1987 Hon. Vincent Howard, Circuit Court Judge, issued an *ex parte* temporary restraining order similar to the one Judge Bradley had issued with the additional requirement that respondent's family and friends should avoid contact with petitioner and children at petitioner's residence.[1]

Donna Blazel executed a dismissal of the second action on March 24, 1987 and the court dismissed the action on March 30, 1987.

---

1. Judge Howard is not a defendant in this action. In plaintiffs' preliminary pretrial confer-

Between March 1, 1986 and March 3, 1987, at least 29 petitions for domestic abuse restraining orders were filed with the Circuit Court for Marathon County. Most involved the issuance of a temporary restraining order. It appears that some were issued without notice to the respondent.

Gerhardt Getzin, a family law practitioner in Wausau, Wisconsin, was involved in thirteen of these cases. In each case, the court issued an *ex parte* domestic abuse restraining order based on the petition alone. In many of these cases, there was no judicial contact with the petitioner.

## OPINION

Plaintiffs' challenge to Wis.Stat. § 813.12(3) is directed to what they contend is the statute's authorization of procedures that violate due process.[2] They argue that it is unconstitutional for judges and family court commissioners to issue temporary restraining orders without notice to the respondent, ordering the respondent to avoid petitioner's home and not to contact the petitioner simply because the petitioner alleges sufficient facts for a judge or family court commissioner to find "reasonable grounds to believe that the respondent has engaged in, or based on prior conduct of the petitioner and the respondent[,] may engage in, domestic abuse of the petitioner."[3] Plaintiffs contend that the statute is deficient on its face and as applied because it does not require notice or hearing before the order is issued and because it does not incorporate necessary safeguards that would render an *ex parte* order constitu-

ence statement, counsel stated that plaintiffs were considering changing the designation of the defendant to "Marathon County Circuit Court" in order to encompass the second order. However, they have not moved to amend the complaint to add Judge Howard as a defendant.

2. In some circumstances, persons challenging the constitutionality of a Wisconsin statute are required to add the Attorney General for the State of Wisconsin as a party. In a hearing before this court, the assistant attorney general representing the defendant in this case stated that he would advise the court promptly if this was required in this case. He has failed to do so. Because the attorney general is representing the defendant in this action and thus has actual notice of the constitutional challange, and because the assistant attorney general in this action failed to notify this court that the addition of the attorney general as a party was required, I find that if this requirement was applicable, the state has waived it.

3. The statute defines domestic abuse as intentional infliction of physical pain, physical injury or illness, intentional impairment of physical condition, violation of § 940.225(1), (2), or (3) [sexual assault], or a threat to engage in any of the prohibited conduct by an adult family or household member against another adult family or household member. § 813.12(1)(a).

The relevant portions of § 813.12 read as follows:

(3)(a) A judge or family court commissioner shall issue a temporary restraining order ordering the respondent to avoid the petitioner's residence, [except that if petitioner and respondent are not married, the respondent owns the premises where the petitioner resides and the petitioner has no legal interest in the premises, the judge or family court commissioner may order the respondent to avoid the premises for a reasonable time until the petitioner relocates], or any premises temporarily occupied by petitioner or both, and to avoid contacting or causing any person other than a party's attorney to contact the petitioner unless the petitioner consents in writing, if all of the following occur:

1. The petitioner submits to the judge or family court commissioner a petition alleging facts set forth under sub. (5)(a).

2. The judge or family court commissioner finds reasonable grounds to believe that the respondent has engaged in, or based on prior conduct of the petitioner and the respondent may engage in domestic abuse of the petitioner....

(b) Notice need not be given to the respondent before issuing a temporary restraining order under this subsection....

(c) The temporary restraining order is in effect until a hearing is held on the issuance of an injunction under sub. (4). A judge or family court commissioner shall hold a hearing on issuance of an injunction within 7 days after the temporary restraining order is issued....

(5)(a) The petition shall allege facts sufficient to show the following:

1. The name of the petitioner and that the petitioner is the alleged victim.

2. The name of the respondent and that the respondent is an adult.

3. That the respondent engaged in, or based on prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner.

tional, such as sworn statements, evidence of a pattern of abuse, allegations of imminent danger, narrowly drawn definitions, and intensive review of specific allegations.

The statute at issue is a fairly recent response to the growing public understanding of the serious problem of domestic abuse. It was preceded by an earlier version of the statute, § 813.025, enacted in 1979, and repealed and replaced with the current statute, § 813.12, in 1983. Both contain essentially similar provisions concerning *ex parte* temporary restraining orders.

Wisconsin is not alone in having this type of legislation. Every state and the District of Columbia have enacted legislation intended to respond to the problem of domestic violence. *See Ex Parte Protection Orders: Is Due Process Locked Out?*, 58 Temple Law Quarterly 841, 841 n. 1 (1985). Thirty-seven of these statutes provide *ex parte* preliminary relief. *Id.* at 848 n. 37. No federal court has yet addressed the constitutionality of any of these statutes, although the Eastern District of Wisconsin considered the constitutionality of a similar statute in the divorce context. *See Geisinger v. Voss*, 352 F.Supp. 104 (E.D.Wis. 1972). Four state courts, including the Wisconsin court of appeals, have considered due process challenges to state statutes permitting *ex parte* orders in domestic abuse cases and have upheld the statutes. *See Schramek v. Bohren*, 145 Wis.2d 695, 429 N.W.2d 501 (Ct.App.1988); *Marquette v. Marquette*, 686 P.2d 990 (Okla.App.1984); *State v. Marsh*, 626 S.W. 2d 223, 231 (Mo.1982) (en banc); *Boyle v. Boyle*, 12 D. & C.3d 767, 775 (C.P.Alleg. 1979).

### 1. Analysis of Wisconsin Decision

In the recent *Schramek* decision, the Wisconsin court of appeals considered claims that § 813.12 is unconstitutional on its face and as applied because of inadequate notice of hearing, denial of a hearing before issuance of a temporary restraining order, denial of the right to a jury trial, vagueness, overbreadth, and denial of equal protection. The court rejected each of these claims. (Because the plaintiffs in this case challenge only the statute's notice and hearing provisions, I will not examine the court of appeals' discussion and rejection of Schramek's other constitutional claims.)

In *Schramek*, the plaintiff contended that the statute violated the due process clause because it failed to provide for notice of the injunction hearing and the nature of the charge so as to permit the respondent to prepare a defense and make objections. The court of appeals found that due process was satisfied by the statute's requirements that the petitioner name the petitioner and respondent, and describe the circumstances of the alleged assault, and that the petition be served on the respondent seven days before the injunction hearing.

In this case, plaintiffs' attack on the statutory notice requirements differs from that made in *Schramek*. Here plaintiffs contend that the statute violates the due process clause not because the notice of the injunction hearing is insufficient, but because there is no notice to respondents before the *ex parte* temporary restraining order is issued. On this issue, *Schramek* provides no guidance.

On another issue, however, the plaintiff in *Schramek* raised a claim identical to that raised by plaintiffs in this case: that the statute is unconstitutional because it does not provide for any hearing prior to the issuance of an *ex parte* temporary restraining order. In its brief analysis of this claim, the state court of appeals relied solely on *Lossman v. Pekarske*, 707 F.2d 288 (7th Cir.1983), a case in which county authorities had removed plaintiff's children from his custody without prior notice or hearing pursuant to Wis.Stat. § 48.19(1). That statute provides that a child may be taken into custody when authorities have reasonable grounds to believe that "the child ... is in immediate danger from his or her surroundings and removal from those surroundings is necessary...." Wis.Stat. § 48.19(1)(d)(5). The children were removed after authorities had learned that the father "was constantly drunk, beat

and kicked the children brutally, threatened to kill them, kept loaded guns around the house ..., and fed them inadequately." 707 F.2d at 289. The Court of Appeals for the Seventh Circuit found that due process was not violated because the threat to the children's safety was an emergency that justified a deprivation without notice or hearing. 707 F.2d at 291–92.

After discussing *Lossman,* the Wisconsin Court of Appeals held as follows:

> Similarly, sec. 813.12, Stats., protects individuals from domestic abuse. Thomas' safety was in jeopardy. The action taken from his protection was an ex parte hearing which resulted in a TRO. The statute provides for a prompt post-deprivation hearing, which, in this case, as in *Lossman,* demonstrated the justification for initially issuing the TRO and for delaying the hearing. See *id.* at 291–92. We find no constitutional infirmity in the statutory procedure or in its present application.

*Schramek,* 145 Wis.2d at 707–08, 429 N.W.2d 501.

The court's analysis in *Schramek* was based on the alleged danger to the petitioner. The court found the statute constitutional only because the petitioner's "safety was in jeopardy." *Id.* Although the court did not hold explicitly that the danger must be immediate, it is reasonable to assume from its reliance on *Lossman* that the court found the danger to the petitioner to be immediate. In *Lossman* the Court of Appeals for the Seventh Circuit had found the removal of plaintiff's children to be constitutional only because there was immediate danger. The state court of appeals did not consider explicitly whether the statute required an allegation of immediate danger before an order may issue, but because the plaintiff challenged the statute on its face and as applied, and the court found the statute to be constitutional, the decision might be read as holding that § 813.12 requires such an allegation.

If the holding of the Wisconsin court of appeals is that an *ex parte* temporary restraining order may issue only when there are allegations of immediate harm, I agree

with it. To make that point explicit, I hold that the statute must be construed to require such allegations, for the reasons discussed hereafter.

The three decisions of other state courts considering the constitutionality of *ex parte* temporary restraining orders in domestic abuse cases provide little guidance when analyzing the Wisconsin statute because the provisions of the statutes considered in those cases are different from those of the Wisconsin statute. It is necessary to analyze the specific provisions of the Wisconsin statute and its legislative history in light of constitutional requirements of due process to determine whether the statute violates the due process clause.

### 2. Due Process Analysis

As a general rule, *ex parte* temporary restraining orders are available only rarely and only after petitioners have satisfied stringent requirements. *See, e.g., Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974); *American Can Co. v. Mansukhani,* 742 F.2d 314, 321 (7th Cir.1984); Fed.R.Civ.P. 65(b). "Our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose,* 415 U.S. at 439, 94 S.Ct. at 1124. Under the federal rules an applicant for an *ex parte* temporary restraining order must provide specific facts in affidavits or in a verified complaint that show immediate and irreparable injury will occur before the adverse party can appear, must certify reasons why notice should not be required, and must post a bond for payment of costs and damages that may be incurred. Fed.R.Civ.P. 65(b).

Plaintiffs take the position that any state temporary restraining order is unconstitutional if it does not comport with the same requirements as Rule 65(b). However, neither the legislative history of Rule 65(b) nor the cases interpreting it suggest that the rule codifies constitutional requirements which must be satisfied before an *ex parte* temporary restraining order may is-

sue. It is more helpful to look to cases analyzing various types of *ex parte* temporary deprivations of liberty or property to determine whether process is due in this particular factual context and, if so, what process is due.

■ Some process is due before a Wisconsin judge or family court commissioner may issue an *ex parte* temporary restraining order under § 813.12 because the order can cause two distinct deprivations. First, by requiring that the alleged abuser avoid the petitioner's residence, in which the respondent may well have a cognizable property interest, the statute threatens a deprivation of property which triggers due process protections. *See, e.g., North Georgia Finishing, Inc. v. DiChem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Second, the order may implicate cognizable liberty interests if it deprives an alleged abuser of his relation with his children. The Supreme Court has found that the liberty interest protected by the Fifth and Fourteenth Amendments includes the right to establish a home and bring up children. *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Accordingly, the state may not terminate the parent-child relationship without a hearing. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

It is true that when an *ex parte* temporary restraining order is issued, there is only a temporary expulsion from the home and interruption of the parent-child relationship and not a termination of rights. The short duration of the deprivation may affect the nature of the process that must be provided, but it does not eliminate the basic requirement of due process protections. *Fuentes,* 407 U.S. at 86, 92 S.Ct. at 1997.

■ Because the Wisconsin order can deprive plaintiffs of protected liberty and property interests, it implicates due process protections. The question is the nature of

the protections that must be provided. Since notice and opportunity to be heard are the cornerstone of due process, *id.* 407 U.S. at 80, 92 S.Ct. at 1994; *Granny Goose,* 415 U.S. at 439, 94 S.Ct. at 1124, a pre-deprivation hearing is required unless extraordinary circumstances necessitate prompt action without a hearing, *Fuentes,* 407 U.S. at 82, 90, 92 S.Ct. at 1995, 1999, or unless sufficient safeguards are provided. *See, e.g., North Georgia,* 419 U.S. 601, 95 S.Ct. 719; *Mitchell v. W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Del's Big Saver Foods v. Carpenter Cook, Inc.,* 603 F.Supp. 1071 (W.D.Wis.1985), *aff'd,* 795 F.2d 1344 (7th Cir.1986).

■ Circumstances justifying the postponing of notice and hearing "must be truly unusual," *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999, and must be shown to have met three criteria:

First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the sezure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Id.* at 91, 92 S.Ct. at 2000. One could argue that the circumstances of domestic abuse restraining orders fulfill these criteria, but the fit is not perfect. First, the threat of harm is less to the general public than to a private individual. Second, there is not necessarily a need for prompt action. In some cases immediate action may be imperative, but in others it may not be. Third, the deprivation is not initiated by the government but by a private petitioner. The circumstances are not comparable to those cases in which seizure or suspension without notice or hearing based on extraordinary circumstances has been permitted. *See, e.g., North American Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of allegedly contaminated poultry); *Ewing v. Mytinger &*

*Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of mislabelled drugs); *Phillips v. Commissioner*, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) (seizure of money due on taxes); *Federal Deposit Insurance Corp. v. Mallen*, — U.S. ——, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988) (suspension of an indicted official of a federally insured bank); *Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (suspension of a horse trainer suspected of drugging race horses).

■ As well as permitting deprivation without prior notice and hearing when extraordinary circumstances exist, the Supreme Court has found such action to be constitutional when appropriate safeguards are provided. To determine what safeguards must be provided in a particular factual situation, a court must consider three factors: the private interest that will be affected; the risk of an erroneous deprivation under existing procedures and the probable value of additional procedures; and the government's interests, including the burdens imposed by additional procedural requirements. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Perry v. Federal Bureau of Investigation*, 781 F.2d 1294 (7th Cir.) (en banc), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) (*Mathews* factors applied to deprivations of liberty interests).

Weighing the *Mathews* factors, it is apparent that substantial procedural protections are mandated by the strength of the respondent's interest in his home and family and the evident risk of erroneous deprivation when mere allegations in a verified petition may be the basis for an *ex parte* temporary restraining order. However, the strength of the petitioner's countervailing interest in her home and family, the government's interest in preventing abuse,

and the possibility that prior notice may incite domestic violence, suggest that those protections should not extend to prior notice.[4]

While helpful, this weighing of interests within the *Mathews* framework does not provide substantial guidance as to what specific procedural protections are required to ensure that the respondent's interests are protected and the interests of the petitioner and the government are not jeopardized unduly. For a clearer indication of the specific procedural safeguards that ensure the proper protection of interests here, it is necessary to turn to a line of cases decided before *Mathews v. Eldridge* but employing a similar analysis. *See Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes*, 407 U.S. 67, 92 S.Ct. 1983; *W.T. Grant*, 416 U.S. 600, 94 S.Ct. 1895; *North Georgia*, 419 U.S. 601, 95 S.Ct. 719 (all reviewing state statutes allowing repossession of property or garnishment without prior notice and hearing).

As with domestic abuse restraining orders, repossession and garnishment involve conflicting interests of petitioner and respondent. Debtors have a protected ownership interest in their wages and property and creditors have strong competing interests since they are owed money and can claim at least partial ownership of the property. In addition, as with domestic abuse cases, providing prior notice involves substantial risks: once notified of the proceeding, the debtor in possession could sell or hide the property. Finally, where the state statutes do not require documentary proof or specific allegations, there is substantial risk of erroneous deprivation.

Although the cases are not entirely consistent, I can conclude that in creditor repossession cases the Supreme Court has

---

**4.** The Wisconsin statute recognizes that when the petitioner has no legal interest in the home, it is improper to protect the petitioner by ordering the respondent away from the home for the 7 days a temporary restraining order may be in effect. Wis.Stat. § 813.12(3)(a), (am) provides that "If the respondent and the petitioner are not married, the respondent owns the premises

where petitioner resides, and the petitioner has no legal interest in the premises, in lieu of ordering the respondent to avoid petitioner's residence ... the judge or family court commissioner may order the respondent to avoid the premises for a reasonable time until the petitioner relocates...."

established that the due process clause requires either a pre-deprivation hearing or at least four minimum procedural safeguards: participation by a judicial officer; a prompt post-deprivation hearing; verified petitions or affidavits containing detailed allegations based on personal knowledge; and risk of immediate and irreparable harm. *See North Georgia,* 419 U.S. at 607, 95 S.Ct. at 722; *Mitchell,* 416 U.S. at 605–09, 94 S.Ct. at 1899–1901; *Fuentes,* 407 U.S. at 93, 92 S.Ct. at 2000; *Sniadach,* 395 U.S. at 339, 89 S.Ct. at 1821. *See also* discussion of these cases in *Del's Big Saver Foods v. Carpenter Cook, Inc.,* 603 F.Supp. 1071.

Both on its face and as it was applied to plaintiff, the Wisconsin statute satisfies three of these criteria explicitly. It allows only a judge or a family court commissioner to issue an *ex parte* temporary restraining order, Wis.Stat. § 813.12(3)[5]; it provides for a post-deprivation hearing within seven days, Wis.Stat. § 813.12(3)(c); and it requires a verified petition based on personal knowledge and containing specific allegations. The pre-printed form states that the petition is made under oath. As such it is a verified petition. *Bradburn v. McIntosh,* 159 F.2d 925, 931 (10th Cir.1947); *Herbert v. Roxana Petroleum Corp.,* 12 F.2d 81, 83 (E.D.Ill.1926). The statute requires more than a conclusory claim that petitioner is entitled to a restraining order. A petitioner must allege facts sufficient to show "that the respondent engaged in, or based on prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner." The petitioner must "[s]tate what happened, when, where, and who did what to whom."

In this case, both orders against plaintiff were issued by a judge, both orders provided for a post-deprivation hearing within seven days, and neither issued on the basis of merely conclusory allegations. Donna

Blazel alleged specific and detailed facts about alleged abuse: the date the alleged incidents occured and specific physical actions by the respondent.

■ Plaintiffs argue that the statute does not satisfy the third criterion of a verified petition or affidavit containing detailed allegations based on personal knowledge because the petitioner is not required to present evidence substantiating the allegations or to appear personally before the judge or family court commissioner and because the judicial officials make no more than a "perfunctory paper review" of the petitions. Although it might be a better procedure for the presiding judge or court commissioner to require the petitioner to appear personally before the court so that the court may evaluate petitioner's credibility and perhaps see physical evidence of abuse such as bruises or scratches, *see Marquette v. Marquette,* 686 P.2d 990; *State v. Marsh,* 626 S.W.2d at 231 (en banc); *Boyle v. Boyle,* 12 D. & C.3d at 775, a personal appearance is not a constitutional requirement. In *W.T. Grant,* 416 U.S. 600, 94 S.Ct. 1895, the Supreme Court found a Louisiana sequestration statute constitutional in part because the state showed that documentary proof was generally available to the court where a creditor requests an *ex parte* sequestration based on the existence of a debt. However, the existence of documentary proof was not the only procedural protection the statute provided. In addition, no other case in this line has suggested that documentary proof or personal appearance before a judicial officer is required, and under Fed.R.Civ.P. 65(b), *ex parte* temporary restraining orders may be issued on the basis of affidavits without other documentary or physical proof.

Finally, although the statute does not require explicitly that allegations be based on personal knowledge, it can be read fair-

---

**5.** Family court commissioners are parajudicial appointed officers of the state court with broad authority. Wisconsin Legislative Council, Powers and Duties of Family Court Commissioners, Information Memorandum 78–8 (1978). Commissioners' duties include presiding, based on the referral of a judge, at certain types of divorce, maintenance, and child support hearings, Wis.Stat. § 767.13, and issuing temporary orders for support of spouse and children, Wis. Stat. § 767.23. Plaintiffs have not argued that family court commissioners are not judicial officials who would satisfy the due process requirement of judicial participation.

ly as requiring it. If the victim of the abuse is the only person who can petition for a temporary restraining order, the lack of a specific requirement is not troubling because it is the victim who will have personal knowledge of the alleged abuse or threats of abuse. The language of the statute suggests that only an abuse victim may be the petitioner. The court is directed to issue orders ordering respondent to avoid "petitioner's residence." Wis.Stat. § 813.12(3)(a). The court may issue a petition if, among other things, it has reason to believe that domestic abuse may occur "based on prior conduct of the petitioner and the respondent." Ordering respondent to avoid petitioner's residence and examining the conduct of petitioner and respondent make no sense unless petitioner and the abuse victim are one and the same.

The only evidence suggesting that someone other than the alleged abuse victim may petition the court is an analysis by the Legislative Research Bureau of an early version of Act 204, the act which was eventually codified as § 813.12. The earlier version contained the words "family or household member" where the final version uses "petitioner." The analysis mentions in passing that the petitioner need not be the "family or household member who is the alleged domestic abuse victim." Legislative Research Bureau, LRB–3651/1, 1983–84 Legislature. Because this interpretation is based on language different from that in the final version of the act and is inconsistent with that language, I conclude that the statute permits only the alleged abuse victim to petition for a temporary restraining order and that the allegations in the petition must be based on personal knowledge. This conclusion is borne out by the facts of this case: the petitioner was the abuse victim and had personal knowledge of her allegations.

The fourth procedural safeguard is a showing of risk of immediate and irreparable harm. It is only the risk of immediate harm that justifies the issuance of an *ex parte* temporary restraining order. Otherwise issuance of the restraining order could await notice to respondent and the holding of an adversarial hearing. Neither the Wisconsin statute nor the pre-printed petition form requires an allegation that there is immediate risk of abuse, and Donna Blazel did not make such an allegation in her petition.

Defendant cites the three state court decisions upholding similar statutes in support of her argument that the Wisconsin statute is valid despite the omission. However, the cases cited addressed statutes different from the Wisconsin statute; all contained an explicit requirement that immediate harm be shown. *See Marquette v. Marquette*, 686 P.2d at 992 n. 3; *State v. Marsh*, 626 S.W.2d at 229; *Boyle v. Boyle*, 12 D. & C.3d at 774.

Defendant is correct, however, in asserting that state statutes bear a presumption of constitutionality and that federal courts should hesitate before striking down a state statute for a constitutional deficiency. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 201, 96 S.Ct. 2909, 2938, 49 L.Ed.2d 859 (1976); *Alaska Packers Asso. v. Industrial Accident Comm'n of California*, 294 U.S. 532, 543, 55 S.Ct. 518, 522, 79 L.Ed. 1044 (1935). It is well established that federal courts should construe state statutes in a manner that would make the statute constitutional if such a reading is reasonable in light of the statute's language and legislative history. *See, e.g., Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162 (1810) (Marshall, C.J.); J. Hurst, *Dealing With Statutes* (1982).

An examination of the legislative history of the Wisconsin statute reveals that although there is no explicit provision that petitioners must allege immediate and irreparable harm, the legislature intended that the statute permit the issuance of an *ex parte* temporary restraining order only on a showing of risk of immediate and irreparable harm. In 1979 the legislature enacted Wis.Stat. § 813.025 as part of comprehensive legislation on domestic abuse. In 1983 it enacted the current statute which plaintiffs challenge in this case, Wis. Stat. § 813.12. The *ex parte* temporary restraining order provision of the current statute is only slightly different from the

predecessor statute. It permits a temporary order to stand for seven days as opposed to the five days allowed previously; it permits family court commissioners as well as judges to issue the orders; it expands the types of violent behavior and threat of violent behavior that justify issuance of an order; and it clarifies that the petition need not be filed in conjunction with a request for a final injunction. *See,* Legislative Research Bureau, LRB–3651/1, 1983–84 Legislature; Drafter's Note, written by Jane Limprecht, Legislative Attorney, LRBa2825/1dn, Jan 30, 1984; compare Wis.Stat. § 813.025 (repealed) and Wis. Stat. § 813.13. None of the statutory features challenged in this case were modified in the 1983 statute.

The legislative history of the current statute contains no discussion of the relevant features of the *ex parte* temporary restraining order. However, legislative history of the predecessor, § 813.025, suggests that the legislature was aware of the constitutional requirement that *ex parte* orders be issued only when risk of immediate and irreparable harm exists and that it intended to require that showing.

Wis.Stat. § 813.025 was enacted after the legislature had considered a 1972 decision of the Eastern District of Wisconsin discussing the constitutionality of Wis.Stat. § 247.23(1) (repealed 1979) which permitted *ex parte* restraining orders in divorce actions.[6] *Geisinger v. Voss,* 352 F.Supp. 104. In *Geisinger,* a Wisconsin family court commissioner had ordered plaintiff away from the residence he shared with his wife pursuant to § 247.23(1), without notice or hearing. Mr. Geisinger contended that his right to due process was violated by the

court's *ex parte* order based only on Mrs. Geisinger's allegation that she "fears her legal rights will be jeopardized if [Mr. Geisinger] is allowed to live in the same household." *Id.* at 105. Because the district court judge evaluated the merits of plaintiff's claim only for the purpose of determining whether a three-judge court should be convened to consider the constitutionality of the Wisconsin statute,[7] his discussion of the constitutional defects of the statute is dicta, but its influence on the Wisconsin legislature makes it relevant to the analysis of the statute. The district court suggested that the statute would be found unconstitutional under *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, because it allowed a state court to issue an *ex parte* order without evaluating the need for it in the particular case, or having to find that there was risk of immediate, irreparable harm, or why the petitioner was unable to leave the home instead of the respondent. *Id.* at 110–11.

An information memorandum prepared in 1978 for the special council on domestic violence analyzed the application of § 247.23(1) and potential constitutional problems with specific reference to the *Geisinger* decision. Powers and duties of family court commissioners [relating to domestic violence] at 8–9, Information memorandum 78–8, Wisconsin Legislative Council, 1978. In a section entitled "Constitutional Issues Concerning the Requisite Showing to Secure an Order to Vacate," the authors interpreted the *Geisinger* decision as suggesting that a pre-hearing order would be constitutional only if there was a showing of imminent harm.[8] In another

---

**6.** The statutory language was rather vague:

> In every action affecting marriage, the court or family court commissioner may, during the pendency thereof, make such temporary orders ... as in its discretion it shall be deemed just an reasonable, ... and may prohibit either spouse from imposing any restraint on the personal liberty of the other....

Wis.Stat. 247.23(1) (repealed). However, Wisconsin courts had construed it to permit *ex parte* orders.

**7.** Until 1976, 28 U.S.C. § 2281 required that a three-judge panel review constitutional challenges to state statutes.

Apparently plaintiff did not pursue his claim, for although the judge determined that a three-judge panel should be convened, there is no indication of further proceedings in the case.

**8.** The memorandum also noted the district court's suggestion that the petitioner show she is unable temporarily to reside elsewhere. Because I find that the cases illuminating the procedural protections required by the due process clause do not suggest that a petitioner must show why he or she cannot leave his home in order to be entitled to an *ex parte* order, I will not consider this aspect of the district court opinion further.

section, the memorandum contains a review of the practice followed by different counties in granting *ex parte* orders and the finding that courts in Dane, LaCrosse, and Polk Counties required an allegation of imminent danger of physical abuse, and that apparently most other counties required a higher showing than that required by the statute. *Id.* at 7.

Wis.Stat. § 813.025 was enacted shortly after the domestic violence memorandum was published. Unlike the repealed § 247.23, § 813.025 required a specific allegation that the statute criminalizing battery and aggravated battery had been or might be violated. The discussion in the memorandum suggests that when the legislature enacted § 813.025 it was aware of the constitutional deficiencies of § 247.23, and wished to avoid them, and that it realized that an *ex parte* order would be constitutional only if it were issued upon allegations of immediate and irreparable harm.

Because the relevant provisions of the current statute are essentially identical to those of the earlier § 813.025, it is proper to infer that the legislative intent motivating the first statute is applicable to the second statute. *See Allen v. Grand Central Aircraft Co.*, 347 U.S. 535, 541–53, 74 S.Ct. 745, 748–55, 98 L.Ed. 933 (1954) (Court considered legislative intent motivating Stabilization Act of 1942 to determine meaning of similar portions of 1952 Defense Production Act); 2A N. Singer, *Sutherland Statutory Construction*, § 51.02 (4th ed. 1984).

A decision by the Wisconsin supreme court provides further support for the proposition that the legislature realized the need for allegations of immediate and irreparable harm. In *In re Marriage of Sandy v. Sandy*, 106 Wis.2d 230, 316 N.W. 2d 164 (1982), the state supreme court considered a challenge to Wis.Stat. § 767.23(1)(a), (j), and (ln), which permitted the state court to issue an order evicting one spouse from the family home without any showing of actual or threatened violence, pursuant to a divorce proceeding and after notice and hearing. In its analysis of the statute's requirements, the court com-

pared it to § 813.025, noting that the committee discussions and the reference materials prepared by the Legislative Council "suggest strongly that the reason for the requirement in sec. 813.025(2)(a), Stats., of a showing of actual or threatened physical violence was to avoid possible constitutional problems if *ex parte* orders to vacate were allowed to issue without such a showing." *Id.* 106 Wis.2d at 238, 316 N.W.2d 164. The court went on to say that "the greater showing of need after 1972 was undoubtedly due" to the suggestion in *Geisinger* that a showing of imminent physical harm was constitutionally required. *Id.* at 239, 316 N.W.2d 164. Applying this evidence of legislative intent to the question before it, the court found that the requirement of showing physical violence is applicable only to *ex parte* orders. *Id.* at 241, 316 N.W.2d 164.

Finally, in the recent decision, *Schramek v. Bohren*, 145 Wis.2d 695, 429 N.W.2d 501, the Wisconsin Court of Appeals held that the statute was constitutional. Although it did not consider whether Wis.Stat. § 813.12 requires allegations of imminent harm before an order may issue, its finding of constitutionality is entitled to considerable deference.

I conclude that when the legislature required a showing of physical violence in Wis.Stat. § 813.025, it intended that showing to be a showing of imminent danger. I base this conclusion on the evidence of the legislature's awareness of the requirement of immediate and irreparable harm, its obvious desire to avoid in § 813.025 the constitutional problems the federal district court had found with § 247.23, and its deliberate inclusion of a requirement that petitioners allege that physical violence has occurred or may occur in the future, coupled with the presumptions that courts should find a statute constitutional when its language and history lend themselves reasonable to that interpretation and that federal courts should defer to a state court's finding that its own state's statute is constitutional. Because of the lack of any significant differences between § 813.025 and the statute challenged in this case, I conclude that the legislature intend-

ed § 813.12 to include the same requirement that the complainant make a showing of imminent danger before an *ex parte* order may issue. It is unnecessary to find that the legislature also intended to require a showing that the harm be irreparable. Any allegation of bodily harm makes that showing.

Because the statute's requirement of a showing of physical violence encompasses a requirement that the violence be shown to be imminent, the statute provides all the procedural safeguards necessary to satisfy the due process clause. Accordingly, I hold that when § 813.12 is construed to require a showing of imminent harm, the statute is constitutional on its face.[9]

■ A holding of facial validity does not necessitate a finding that the statute was applied constitutionally to Alvin Blazel or other plaintiffs in the class. Although Donna Blazel's petitions were the basis for the two orders entered against Alvin Blazel, they contain no allegation of a risk of immediate harm. In the first, she states only that Alvin Blazel has assaulted her some two weeks before. There is no allegation that she feared he would attack her again in the near future. In the second petition, she adds allegations of previous assaults, but again, there is no allegation of a risk of imminent harm. I conclude that the *ex parte* order that required Alvin Blazel to avoid his home and children for seven days deprived him of property and liberty interests without due process of law, and that plaintiff is entitled to a declaration that his constitutional rights were violated. Plaintiff has not sought money damages from defendant, and she is immune from them. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, *rehearing denied,* 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978) (judicial immunity prevents imposition of money damages in civil suits against judicial officers for judicial actions).

Whether any of the other plaintiffs were similarly deprived is something that cannot be determined from the present record. Plaintiffs have not filed copies of the petitions which were the basis for the orders issued against the other plaintiffs in the class, from which I might determine whether those petitions contained the requisite allegations of imminent harm. However, even if these plaintiffs were to submit evidence and I were to find that the petitions did not contain the requisite allegations and that plaintiffs' due process rights had been abridged, plaintiffs would not be entitled to monetary relief because the defendant is immune from damages. *See id.*

### ORDER

IT IS ORDERED THAT plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. It is further ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part. Wis.Stat. § 813.12 is constitutional on its face if construed as it should be to require that the complainant allege that the risk of physical harm is imminent. However, the statute was applied unconstitutionally to plaintiff Alvin D. Blazel.

---

**9.** To ensure that petitioners are aware that they must allege a risk of imminent harm, the state might consider revising the simplified form it provides for petitions for *ex parte* restraining orders to make it explicit that such an allegation is necessary.