993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert J. EISENBART, Plaintiff-Appellant,
v.
STATE of WISCONSIN, et al., Defendants-Appellees.
 No. 92-1722.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 14, 1993.[1]
Decided April 29, 1993.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Robert J. Eisenbart filed this action against the State of Wisconsin, the County of Racine, three judges and a court commissioner, pursuant to 42 U.S.C. § 1983, challenging the Wisconsin domestic abuse statutes (Wis.Stat. § 757.69), after a two-year injunction was entered by a Wisconsin court, prohibiting Eisenbart from contacting Linda Masters, the mother of Eisenbart's daughter. Eisenbart appeals from the district court's dismissal of the action as frivolous. For the reasons set forth in the attached order, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 
 2
 UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN
 
 
 3
 ROBERT J. EISENBART, Plaintiff,
 
 
 4
 v.
 
 
 5
 STATE OF WISCONSIN, RACINE COUNTY, JUDGE RICHARD S. BROWN,
 
 
 6
 JUDGE DANIEL P. ANDERSON, JUDGE HARRY. G. SNYDER,
 
 JUDGE STEPHEN A. SIMANEK, and COURT
 
 7
 COMMISSIONER WILLIAM HONRATH,
 
 
 8
 Defendants.
 
 Civil Action No. 91-C-1269
 ORDER
 
 9
 In this action, brought under 42 U.S.C. § 1983, Robert J. Eisenbart, who is proceeding without a lawyer, has launched a wide-ranging assault on Section 813.12, Wisconsin Statutes, which provides for domestic abuse restraining orders and injunctions. The State of Wisconsin, Judges Richard S. Brown, Daniel P. Anderson, and Harry G. Snyder of the court of appeals, and Racine County Circuit Judge Stephen A. Simanek have filed numerous motions to dismiss the case.[1] The motions included copies of rule 56(e) and (f), informing Mr. Eisenbart that he must respond to factual assertions submitted by the movants. Independently of that warning, Mr. Eisenbart had submitted numerous exhibits in support of his claims. The motions will therefore be treated as motions for summary judgment.
 
 
 10
 The record, as submitted by Mr. Eisenbart, reveals the following facts, which unless otherwise indicated are taken from Mr. Eisenbart's testimony at an injunction hearing before Judge Simanek on December 17, 1990. Mr. Eisenbart and Linda Masters, who at the time was separated from her husband Dennis Masters, lived together for a time in 1987 and 1988. Mrs. Masters gave birth to a child, Emily. Soon after Emily's birth, Mrs. Masters returned to her husband. Mr. Eisenbart initiated a paternity action and proved to the satisfaction of a court commissioner that Emily was his daughter. Mr. Eisenbart was granted joint custody of the child.
 
 
 11
 In mid-May 1988, Mrs. Masters told Mr. Eisenbart that she wanted to move back in with him and to proceed to divorce her husband. She lived with Mr. Eisenbart for a short time. On June 6, the day of a previously scheduled hearing, a court commissioner granted Mrs. Masters and Mr. Eisenbart joint custody of Emily, on the basis that they were living together so that joint custody, in effect, existed. The relationship did not run smoothly, however, and Mrs. Masters apparently obtained counsel to seek sole custody of Emily.
 
 
 12
 On June 16, 1988, Mr. Eisenbart confronted Mrs. Masters, asking her whether she intended to seek custody. There is a dispute over the extent of the violence which occurred during this encounter. Mr. Eisenbart testified that he locked himself in the bathroom; that Mrs. Masters called her husband; that she left the apartment; and that Mr. Eisenbart then called the sheriff's department. Mrs. Masters indicated that there had been violence. After this incident, Mrs. Masters returned to her husband.
 
 
 13
 During one of the court proceedings in this matter Mrs. Masters contended and Mr. Eisenbart denied that he stated that he would obtain custody of Emily, "even if one of us has to die." Ultimately, on March 8, 1989, the issue of custody was settled. The parties were given joint custody, but Mrs. Masters was given primary placement.
 
 
 14
 Following this, on May 27 and 28, according to Mr. Eisenbart's testimony, Mrs. Masters contended that she had received some "really strange phone calls" at her home, where she was living with her husband--calls which stated that Mr. Eisenbart was going to kill her.
 
 
 15
 On October 16, a Detective McReynolds of the Racine County sheriff's department went to the Masters' home. According to his report, the purpose of the visit was to inform Mrs. Masters that the sheriff's department had received information through "Crime Stoppers" that Mr. Eisenbart had an obsession to try to kill her. During the interview, Mrs. Masters informed Detective McReynolds that she had observed Mr. Eisenbart following her earlier when she was driving on highway 20. Detective McReynolds warned Mrs. Masters to take Mr. Eisenbart's threats seriously and advised her to obtain a temporary restraining order. An ex parte order was issued on November 7, 1990.
 
 
 16
 A hearing was held on November 13, 1990, before Court Commissioner William Honrath, a defendant in this case. He issued a 1-year injunction against Mr. Eisenbart. Mr. Eisenbart requested a de novo review of that order. A hearing was held on December 17, 1990, before Judge Simanek. Judge Simanek found that reasonable grounds existed to believe that Eisenbart had engaged in, or might engage in, domestic abuse directed toward Mrs. Masters. A 2-year injunction was issued, ordering Eisenbart to avoid Masters' residence and to avoid contacting her. The order specifically allowed the exercise of temporary periods of physical placement with Emily.
 
 
 17
 Mr. Eisenbart appealed the injunction to the Wisconsin Court of Appeals. On September 18, 1991, the court of appeals affirmed the trial court, found the appeal frivolous, and remanded the case for a determination of costs and reasonable attorney fees to be assessed against Mr. Eisenbart.
 
 
 18
 Mr. Eisenbart filed this action, pursuant to 42 U.S.C. § 1983, on November 25, 1991. Here he alleges that the Wisconsin domestic abuse statute, section 813.12, under which the injunction was issued against him, violates the United States Constitution in that it "creates a Bill of Attainder and/or a Bill of Pains and Penalties," it violates the first amendment, it violates his right to procedural and substantive due process and to the equal protection of the laws, and it violates his seventh amendment right to a jury trial. He also claims that by refusing to allow him to tape-record court proceedings, both Court Commissioner Honrath and Judge Simanek protected the monopoly enjoyed by court reporters, in violation of the federal antitrust laws.
 
 
 19
 In response, the office of the attorney general, on behalf of the state and the judges, filed four separate motions raising approximately 19 separate grounds for dismissal of the suit. It is unclear to me why such a shotgun approach was used here by either side.
 
 
 20
 Many of these issues raised by Mr. Eisenbart are unworthy of comment. For example, I will not delve into an issue regarding a violation of either the due process clause or the antitrust laws based on the orders refusing to allow tape recording of court proceedings. There simply is no cognizable claim.
 
 
 21
 Constitutional challenges to section 813.12 have previously been considered, both by the Wisconsin Court of Appeals in Schramek v. Bohren, 145 Wis.2d 695 (1988), and by Federal Judge Barbara Crabb in Blazel v. Bradley, 698 F.Supp. 756 (W.D.Wis.1988). In Blazel, Judge Crabb determined that those provisions of the statute which allowed for an ex parte restraining order required that the petitioner make a showing of imminent danger of physical harm and therefore upheld the constitutionality of the provisions.
 
 
 22
 In Schramek, the court of appeals considered a broader challenge to the statute and found that it withstood a constitutional challenge. Sometimes it is clear that the court was referring only to the Wisconsin constitution, not the United States Constitution, and sometimes it is not.
 
 
 23
 Insofar as either of those cases sheds light on Mr. Eisenbart's claims, I am in agreement with them and would rule in the same manner in this case. However, a more fundamental problem exists with the majority of Mr. Eisenbart's claims, which are due process claims.
 
 
 24
 The injunction of which Mr. Eisenbart complains orders that:
 
 
 25
 The respondent avoid the petitioner's residence and/or any premises temporarily occupied by petitioner now and in the future.
 
 
 26
 The respondent avoid contacting or causing any person other than a party's attorney to contact the petitioner unless petitioner consents in writing. Contact includes contacts at work, school, at public places, or by phone or in writing.
 
 
 27
 Other: Except for exercise of temporary periods of physical placement with child Emily.
 
 
 28
 The injunction specifically does not prohibit contact between Mr. Eisenbart and his child. Mr. Eisenbart's complaint does not contend that it does, although he states that his "rights to unfettered contact with his daughter, right to speak with the mother concerning the daughter," have been violated. He does not explain the legal source of his so-called right to "unfettered" contact with his daughter. And, in fact, he has none. See Michael H. v. Gerald D., 491 U.S. 110 (1989). If such a right existed, no custody order would be constitutional. Furthermore, if such a right existed, Mrs. Masters would be able to claim it also and to demand contact with her daughter unfettered by Mr. Eisenbart. The claim as it is stated is frivolous.
 
 
 29
 Even though it is not "unfettered," Mr. Eisenbart may have a liberty interest in attempting to maintain his relationship with his daughter. See Michael H.; Stanley v. Illinois, 405 U.S. 645 (1972); Quilloin v. Walcott, 434 U.S. 246 (1978); Caban v. Mohammed, 441 U.S. 380 (1979); Lehr v. Robertson, 463 U.S. 248 (1983). However, that right has not been taken away from him by the injunction. Therefore, his substantive due process rights have not been interfered with. In addition, even if there were a protected interest, nothing complained of regarding the injunction hearing rises to the level of a procedural due process claim. Mr. Eisenbart had a hearing and had the right to present evidence. The matters of which he complains, such as the failure to allow someone to sit with him or to allow tape recording of the proceedings, do not rise to constitutional dimensions.
 
 
 30
 The essence of the order of December 17, 1990, which is the order in effect, is to prohibit contact with Mrs. Masters. A fair reading of the complaint and of Mr. Eisenbart's testimony at the December 17, 1990, hearing indicates that it is primarily the prohibition against contact with Mrs. Masters of which he complains. The question must arise as to what "right" or liberty interest Mr. Eisenbart has--with or without the order--to contact with Mrs. Masters. It is true that she is the mother of his child. However, she is also Dennis Masters' wife. She and Mr. Eisenbart do not own property together. They were not living together--in fact, she was living with her husband--when the injunction was issued. Yet, Mr. Eisenbart claims that in the process of issuing the order, and affirming the order, the judges who are defendants in this case were violating his constitutional rights. The Constitution does not go so far as to grant a right to force one's presence on another person, say nothing of another person's spouse, even if the other person is the parent of his or her child. It does not provide Mr. Eisenbart with a liberty interest in contact with someone he once lived with, but who now lives with her husband, to whom she was married during the time she lived with Mr. Eisenbart. Because he has no liberty interest in maintaining a relationship with Mrs. Masters, Mr. Eisenbart cannot maintain a 14th amendment claim.
 
 
 31
 As to the remainder of his claims, most do not require comment. He has no right to a jury trial in an equitable proceeding. Furthermore, the State is not a proper defendant because it is not a person within the meaning of that word as used in section 1983. Will v. Michigan Dept. of Police, 491 U.S. 58 (1989). The judges and the court commissioner have an absolute judicial immunity from a suit for damages in this situation. Stump v. Sparkman, 435 U.S. 349 (1978). Mr. Eisenbart cannot maintain a claim for loss of reputation. Paul v. Davis, 424 U.S. 693 (1976).
 
 
 32
 Racine County and Court Commissioner Honrath, as I noted in footnote 1, have not moved for dismissal. However, they will be dismissed on my own motion. There are no allegations against the County. The County cannot be sued simply because it employs Commissioner Honrath. See Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). Commissioner Honrath issued an order in this case, but it was promptly superseded by the one issued by Judge Simanek, which is the order currently causing Mr. Eisenbart's complaints. Commissioner Honrath's order cannot now be enjoined and he is immune from a claim for damages.
 
 
 33
 For all of the foregoing reasons, this action is DISMISSED.
 
 
 34
 SO ORDERED at Milwaukee, Wisconsin, this 18 day of February, 1992.
 
 BY THE COURT:
 
 35
 /s/TERENCE T. EVANS
 
 CHIEF JUDGE
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [1]
 They filed motions in response to the complaint. Then on December 16, 1991, Mr. Eisenbart filed an amended complaint. Motions were then filed to dismiss the amended complaint. The two remaining defendants, William Honrath, an assistant family court commissioner in Racine, and Racine County, have not moved to dismiss