James **NOLLET**, James Carroll, David Merchant, Donald Roine, Richard Scanlon, Earl Sholley, and the Fatherhood Coalition/CPF, Plaintiffs,

v.

**JUSTICES OF THE TRIAL COURT OF THE COMMONWEALTH OF MASSACHUSETTS**, Defendants.

No. Civ.A.99–11861–EFH.

United States District Court, D. Massachusetts.

Jan. 27, 2000.

**206**

David C. Grossack, Hull, MA, for Plaintiffs.

Adam Simms, Assistant Attorney General, Robert Quinan, Assistant Attorneys General, Government Bureau, Boston, MA, for Defendants.

### *MEMORANDUM AND ORDER*

HARRINGTON, District Judge.

### *STATEMENT OF THE CASE*

This matter is before the Court on Defendants' Motion to Dismiss the Plaintiffs' Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants assert four bases for dismissal: (1) that this Court does not have jurisdiction under the *Rooker–Feldman* doctrine; (2) that this Court should abstain from exercising its jurisdiction under the *Younger* abstention doctrine; (3) that the defendants are immune from suit; and (4) that the plaintiffs have failed to state a cause of action under 42 U.S.C. § 1983. For the reasons stated

below, the Defendants' Motion to Dismiss is granted.

The individual plaintiffs in this case, James Nollet, James Carroll, David Merchant, Donald Roine, Richard Scanlon and Earl Sholley, are all men who have been litigants in domestic relations and/or abuse prevention matters in the trial courts of Massachusetts. The Fatherhood Coalition/CPF, which is also named as a plaintiff, is an unincorporated advocacy organization comprised of males who have been involved in custody and visitation issues in Massachusetts courts.[1] The defendants comprise the 345 state court judges who currently make up the Superior Court, District Court and Family and Probate Courts of the Commonwealth of Massachusetts.

The plaintiffs bring this action pursuant to 42 U.S.C. § 1983 seeking both declaratory and injunctive relief. Specifically in Count I, plaintiffs seek declaratory and injunctive relief declaring Mass.Gen.L. ch. 209A, § 4 unconstitutional because it permits the granting of temporary restraining orders at *ex parte* hearings and enjoining the judicial defendants from further enforcement of said statute. In Count II, plaintiffs seek declaratory and injunctive relief commanding the judicial defendants to adopt measures to prevent discrimination against men in the Probate and Family Court. In Count III, plaintiffs seek declaratory and injunctive relief declaring Mass.Gen.L. ch. 209A, § 3B unconstitutional as constituting an impermissible restriction on the plaintiffs' Second Amendment right to bear arms and enjoining the judicial defendants from further enforcement of said statute. When a sole federal district court judge is required to consider declaring an act of a state legislature, the representative of all the people of that state, as null and void, that judge must approach this awesome task with grave deliberation and prudent caution. In a

---

1. Without ruling on the matter, this Court assumes, for the purpose of this motion only, that the Fatherhood Coalition/CPF has standing to bring suit in this matter.

representative democracy a judge does not lightly declare an act of the people's representatives unconstitutional.

### Statutory Scheme: Mass.Gen.L. ch. 209A

The law being challenged in this case, Massachusetts General Laws Chapter 209A (the Massachusetts Abuse Prevention Law), was enacted in 1978 in response to a growing public awareness of domestic violence and the legal system's ineffectiveness in dealing with such violence. Chapter 209A provides that a person suffering abuse from a family or household member may file a complaint in the Superior, Probate and Family, or District/Municipal court requesting protection against such abuse. *See* Mass.Gen.L. ch. 209A, § 3.

If the 209A petitioner proves the existence of such abuse by a preponderance of the evidence, *see Frizado v. Frizado,* 420 Mass. 592, 596–97, 651 N.E.2d 1206, 1210 (Mass.1995), the court may then issue an order imposing significant restrictions on the defendant. *See* Mass.Gen.L. ch. 209A, § 3. Although the Court is free to fashion whatever remedy it deems appropriate, the statute enumerates a number of specific orders which the Court may issue, including: ordering the alleged abuser to vacate the household abode, *see id.* Section 3(c), and ordering the alleged abuser to refrain from contacting any children in the petitioner's care regardless of the alleged abuser's relationship to such children. *See id.* Section 3(h).

A court can issue a temporary order granting the remedies provided in ch. 209A, § 3, without giving the alleged abuser notice and an opportunity to be heard, provided that the petitioner files a complaint and demonstrates "a substantial likelihood of immediate danger of abuse." *See* Mass.Gen.L. ch. 209A, § 4. If the court does issue an *ex parte* temporary order under Section 4, the court must then give the defendant the opportunity to be heard on the question of continuing the temporary order within ten (10) business days after the issuance of the *ex parte*

order. *See id.* In addition, if the petitioner in a Chapter 209A proceeding demonstrates a substantial likelihood of immediate danger of abuse, then the court is mandated to order the defendant to relinquish immediately for confiscation by the police any firearms and ammunition in the defendants' control, ownership or possession, and to surrender any license to carry firearms. *See* Mass.Gen.L. ch. 209A, § 3B.

With regard to the plaintiffs in this case, it has been asserted both at oral argument and through subsequent correspondence to the Court that Messrs. Nollet, Carroll, Merchant, and Sholley have all been subject to both temporary restraining orders issued *ex parte,* as well as permanent restraining orders issuing after a full hearing. While the permanent restraining orders against Messrs. Nollet and Sholley have expired, Messrs. Carroll and Merchant are still subject to permanent restraining orders. In addition, counsel for the plaintiffs have asserted that Plaintiff Merchant was required to relinquish a firearm pursuant to ch. 209A, § 3B. Plaintiffs Roine and Scanlon have never been subject to a restraining order issued under Chapter 209A, but they allege that in the course of their divorce and support proceedings they were denied the equal protection of the law because of their sex.

### DISMISSAL STANDARD

At this point in the litigation, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In considering a motion to dismiss, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim, the complaint is construed in the light most favorable to the pleader and all allegations therein are taken as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90

(1974); *see also* 5A Wright & Miller, Federal Practice and Procedure: Civil 2d §§ 1350, 1357. However, with regard to a 12(b)(1) motion, the party asserting subject matter ·jurisdiction has the burden of proving that the court·has jurisdiction over the claims. *See Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998).

When ruling on a 12(b)(6) motion to dismiss for failure to state a claim, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or. incorporated by reference in the complaint, and matters of which judicial notice may be taken. *See Samuels v. Air Transp. Local 504,* 992 F.2d 12, 15 (2d Cir.1993). In deciding such a motion, the Court must merely determine whether the allegations of the complaint constitute a statement of claim under the liberal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *See Badillo Santiago v. Andreau Garcia,* 70 F.Supp.2d 84, 86 (D.P.R.1999).

### *JURISDICTION*

Before deciding any other issue, this Court must first determine whether it has subject matter jurisdiction over the plaintiffs' claims. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 89–102, 118 S.Ct. 1003, 1010–16, 140 L.Ed.2d 210 (1998) (even if the merit question is "easy" and the jurisdictional question is not, a federal court must first find that it has jurisdiction to hear the claim). In their brief in support of their motion to dismiss, the defendants raise three specific challenges to this Court's jurisdiction over this case: (1) the *Rooker–Feldman* doctrine; (2) the *Younger* abstention doctrine; and (3) judicial immunity. However, this Court has ·jurisdiction over the claims set forth in Count I and Count III pursuant to 28 U.S.C. §§ 1331 and 1343 (the jurisdictional bases for 42 U.S.C. § 1983), although it does not have jurisdiction over

the claim in Count II, as Count II essentially seeks injunctive relief against judicial officers which is barred by the very language of 42 U.S.C. § 1983.

### *Rooker–Feldman Doctrine*

The essential import of the *Rooker–Feldman* doctrine is that no federal court, other than the United States Supreme Court, has been given jurisdiction to *directly* review state-court decisions under the provisions of 28 U.S.C. § 1257.[2] *See ASARCO Inc. v. Kadish,* 490 U.S. 605, 622, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989). However, the plaintiffs are not attempting to challenge or appeal any particular state court decision, rather they are challenging the constitutionality of a broad statutory scheme which they claim deprives individuals of significant property and liberty interests without due process of law. The *Rooker–Feldman* doctrine does not bar this type of suit where a party is challenging the constitutionality of a state statute on its face. *See Schneider v. Colegio de Abogados de Puerto Rico,* 917 F.2d 620, 628 (1st Cir.1990), *cert. denied,* 502 U.S. 1029, 112 S.Ct. 865, 116 L.Ed.2d 772 (1992). *See also* Wright & Miller, § 4469.1. Since the plaintiffs' case is not a direct attack on any particular state court judgment, the *Rooker–Feldman* doctrine is not applicable to this case.

### *Younger Abstention Doctrine*

Similarly, the principles of comity and federalism embodied in the *Younger* doctrine do not dictate that this Court should abstain from exercising jurisdiction over this case. The *Younger* doctrine advises federal courts to abstain from interfering with "ongoing, originally state-initiated civil or even administrative proceedings that satisfy three conditions: (1) the proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and

---

**2.** This doctrine is subject to· some exceptions, most notably in federal *habeas corpus* petition

proceedings.

(3) they provide an adequate opportunity to raise federal constitutional challenges." *Bettencourt v. Board of Registration in Medicine*, 904 F.2d 772, 777 (1st Cir.1990) (citing *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431–32, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)).[3]

█ The *Younger* abstention doctrine would be applicable, if at all, only to Plaintiffs Carroll and Merchant, who are the only plaintiffs still subject to "ongoing" judicial proceedings in the form of restraining orders which are subject to modification by the Massachusetts courts. However, even as to Plaintiffs Carroll and Merchant, *Younger* abstention is not dictated because the state court proceeding under ch. 209A, § 4 does not afford litigants an adequate opportunity to assert their federal constitutional claims. *See Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626–29, 106 S.Ct. 2718, 2722–24, 91 L.Ed.2d 512 (1986); *Moore v. Sims*, 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979) ("the only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional

claims"). Under ch. 209A, § 4, an alleged abuser who is subject to a temporary restraining order issued *ex parte* is merely afforded the "opportunity to be heard on the question of continuing the temporary order. . . ." Mass.Gen.L. ch. 209A, § 4. Once a temporary restraining order, which has been issued under ch. 209A, § 4, is no longer in effect (whether because it is merged into a permanent order or because a permanent order is denied), any constitutional challenge to the *ex parte* process would be considered moot in Massachusetts courts. *See Zullo v. Goguen*, 423 Mass. 679, 680, 672 N.E.2d 502, 503 (Mass. 1996) (dismissing petition as moot because the plaintiff was no longer subject to a restraining order). Since the state court proceedings do not afford a state court litigant an adequate opportunity to assert the federal challenge to the constitutionality of the *ex parte* process, the plaintiffs' claims are not subject to the *Younger* abstention doctrine.[4]

### Judicial Immunity

█ It is well settled that a judicial defendant is immune from a suit seeking monetary damages for actions which the

---

**3.** There is no doubting that the second condition of *Middlesex County* is satisfied in this case. The issuance and maintenance of restraining orders implicate the important state interest of quickly and effectively protecting individuals from domestic abuse. *See Moore v. Sims*, 442 U.S. 415, 434–35, 99 S.Ct. 2371, 2383, 60 L.Ed.2d 994 (1979) (there is a compelling state interest in quickly and effectively removing victims of child abuse from their parents).

**4.** Although not raised by the defendants, the Court's *Younger* analysis raises a question as to whether the claims of the plaintiffs who are not still subject to a restraining order are moot. The claims of the plaintiffs who are no longer subject to restraining orders are not moot because they fall into a well founded exception to the mootness doctrine—wrongs which are capable of repetition yet which evade review. *See, e.g., Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–515, 31 S.Ct. 279, 55 L.Ed. 310 (1911) (seminal Supreme Court case articulating this exception to the mootness doctrine). In order for this

exception to apply two criteria must be met. First, the injury must be of the sort likely to happen to the same plaintiff again. *See Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). Second, it must be a type of injury of inherently limited duration so that it is likely to always become moot before federal court litigation is completed. *See id.; Carroll v. President & Commrs. of Princess Anne*, 393 U.S. 175, 178–80, 89 S.Ct. 347, 350–51, 21 L.Ed.2d 325 (1968) (holding that a ten-day restraining order against demonstrations was capable of repetition and always likely to evade review because litigation would be completed before the ten days expired). Based upon the filings and the assertions of counsel at oral arguments, both these criteria are satisfied. In this case the challenged action of Count I and Count III, the *ex parte* order, can only last for up to ten business days and is therefore too short a period of time to be litigated fully prior to its expiration; and there is a reasonable expectation that these same plaintiffs would be subjected to another *ex parte* order.

defendant took within his/her judicial capacity. However, the plaintiffs in this case are seeking only declaratory and injunctive relief, which, in the past, have been permitted under 42 U.S.C. § 1983 against judges acting in their official capacity. *See Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984). However, in 1996 Congress passed the Federal Courts Improvement Act ("FCIA") which legislatively reversed *Pulliam* in several important respects. Most significantly, FCIA amended 42 U.S.C. § 1983 to state that ". . . in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (amended Oct. 19, 1996 by Pub.L. 104–317, Title III, § 309(c), 110 Stat. 3853). Plaintiffs neither allege that the defendants have violated a declaratory decree nor that declaratory relief is unavailable. On the contrary, the very nature of their claims, which seek both declaratory and injunctive relief, indicates that declaratory relief is available. *See Jones v. Newman,* No. 98–CIV–7460, 1999 WL 493429, at *7 (S.D.N.Y. June 30, 1999); *Finn v. County of Albany,* No. 98–CV–844, 1999 WL 291820, at *5 (N.D.N.Y. May 5, 1999). Thus, those claims of the plaintiffs which seek injunctive relief are dismissed.

■ As such, Count II must be dismissed because, even though it prays for both declaratory and injunctive relief, the relief which it seeks is solely injunctive in nature. Count II does not seek declaratory relief in the form of a judgment ruling on the constitutionality of the current rules of procedure and evidence followed by the

Family and Probate Court. Rather, Count II seeks solely injunctive relief in the form of a decree "command[ing]" the Family and Probate Court "to adopt measures to prevent discrimination against men." Not only is it beyond the powers of a federal court to promulgate rules for a state court, *see Spencer v. Texas,* 385 U.S. 554, 563–69, 87 S.Ct. 648, 654–56, 17 L.Ed.2d 606 (1967), but the language of 42 U.S.C. § 1983, as amended by FCIA § 309(c), specifically bars this type of injunctive relief against state court judges. *See Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999).

Therefore, Count II must be dismissed because state court judges are immune from the injunctive relief sought. *See* 42 U.S.C. § 1983. However, this Court has jurisdiction over the plaintiffs' remaining claims for declaratory relief set forth in Counts I and III pursuant to 28 U.S.C. §§ 1331 and 1343.[5]

### *FAILURE TO STATE A CLAIM*

■ To assert a viable claim under 42 U.S.C. § 1983, a plaintiff must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of clearly established rights, privileges or immunities guaranteed by the federal Constitution or laws of the United States. *See Meehan v. Town of Plymouth,* 167 F.3d 85, 88 (1st Cir. 1999); *Rodriguez–Cirilo v. Garcia,* 115 F.3d 50, 52 (1st Cir.1997). With regard to the remaining claims in the complaint (Counts I and III), the plaintiffs in this case have not properly alleged either constituent element of a Section 1983 claim.

---

5. In response to this Court's suggestion at oral argument, the defendants have subsequently asserted at oral argument and in a letter to the Court that this Court lacks jurisdiction over this matter because there is no "case or controversy" based on the First Circuit's opinion *In re The Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17 (1st Cir.1982). The defendants argue that as neutral adjudicators, sworn to uphold the constitution, they have no interest in defending the constitutionality of Chapter 209A. While this argument carries some weight, this Court follows the lead of the First Circuit and avoids deciding this unclear constitutional question and dismisses the complaint on the alternative grounds discussed below. *See id.* (discussing but declining to decide this very constitutional issue).

The plaintiffs have failed to establish the first element because the judicial defendants are being required to defend actions taken in their adjudicatory capacity and are thus not proper parties to this suit under Section 1983. The plaintiffs have also failed to establish the second element because Chapter 209A does not violate either the Fourteenth or Second Amendments as alleged in the plaintiffs' complaint. As such, the defendants' 12(b)(6) motion to dismiss is granted because the plaintiffs' complaint fails to state a claim under 42 U.S.C. § 1983.

### State Action

■ The action of the judicial defendants in adjudicating the merits of complaints brought under the challenged state law does not constitute state action. When considering an *ex parte* Chapter 209A petition for a temporary restraining order, the judicial defendants act solely in their role as neutral adjudicators. An action taken by a state judge solely in his/her adjudicatory role does not constitute state action. As the First Circuit has said, "In short, § 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message." *In re The Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17, 22 (1st Cir.1982); *see also Mendez v. Heller,* 530 F.2d 457, 459–460 (2d Cir.1976). The judicial defendants are immune from suit because they are acting purely in their adjudicatory role when considering the merits of a 209A petition.

While Chapter 209A gives the judges of the Massachusetts trial courts wide latitude in fashioning the conditions of both temporary and permanent restraining or-

ders, the judicial defendants are not acting in either an enforcement, administrative or legislative capacity when they consider the merits of a 209A petition. *See In re The Justices,* 695 F.2d at 22–25 (discussing a judge's adjudicatory role, as compared to other roles that a judge might have that would not be barred from such a suit). The judicial defendants are acting merely as adjudicators under Chapter 209A because the statute neither confers upon them the power to initiate actions, nor does it delegate to them any administrative functions. *See id.; see also Brandon E. v. Reynolds,* 98–CV–4236, 1999 WL 98585, at *6 (E.D.Pa. Feb. 25, 1999). Only a person who is suffering from abuse is authorized to bring an action for a restraining order. *See* Mass.Gen.L. ch. 209A, § 3. The judicial defendants are merely authorized to decide the merits of each complaint and to formulate the appropriate remedy in each individual case. As such, the judicial defendants are not the proper party defendants in this action to declare Mass.Gen.L. ch. 209A unconstitutional, as their actions in adjudicating complaints brought under Mass.Gen.L. ch. 209A does not constitute state action for the purposes of 42 U.S.C. § 1983. *See In re The Justices,* 695 F.2d at 22–23.[6]

### Civil Rights Deprivation

Even if the judicial defendants' role in the statutory scheme of Chapter 209A were to render them state actors for the purposes of Section 1983, the plaintiffs' claims would nonetheless fail because Chapter 209A does not impermissibly deprive individuals of clearly established rights, privileges or immunities guaranteed by the federal Constitution or laws of the United States. *See Rodriguez–Cirilo v. Garcia,* 115 F.3d at 52. As to Count I, the *ex parte* procedure of ch. 209A, § 4 is

---

**6.** While it could be argued that the 1996 amendment to Section 1983 (FCIA § 309(c)) is somewhat ambiguous and could be interpreted as unintentionally abrogating the First Circuit's holding in *In re The Justices,* no court has considered this issue and it seems patently clear that Section 309(c) was intended to limit the ability to bring suits against judges under Section 1983. *See, e.g., Kampfer v. Scullin,* 989 F.Supp. 194, 201 (N.D.N.Y. 1997).

constitutional because it provides the due process protections that are necessary before the state may deprive an individual of the constitutionally protected liberty and property interests that are at stake when a temporary restraining order is issued in a domestic abuse action. As to Count III, an alleged violation of the Second Amendment cannot be the basis for a Section 1983 cause of action against a state official because the Second Amendment to the United States Constitution has not been incorporated by the Fourteenth Amendment and made applicable to the states.

### Fourteenth Amendment Due Process Claim

Despite the fact that every state in the union has a domestic abuse statute similar to Chapter 209A, there is very little case law on the constitutionality of an *ex parte* temporary restraining order procedure like Chapter 209A. What case law there is, however, has upheld the constitutionality of such laws. *See, e.g., Blazel v. Bradley,* 698 F.Supp. 756 (W.D.Wis.1988); *Baker v. Baker,* 494 N.W.2d 282 (Minn.1992); *Schramek v. Bohren,* 145 Wis.2d 695, 429 N.W.2d 501 (1988); *Marquette v. Marquette,* 686 P.2d 990 (1984); *State v. Marsh,* 626 S.W.2d 223 (Mo.1982) (*en banc*); *Pendleton v. Minichino,* No. 506673, 1992 WL 75920 (Conn.Super. April 3, 1992). Even more significantly, the Massachusetts Supreme Judicial Court has held that Chapter 209A, in general, affords

an alleged abuser all the necessary due process protections required under Article 12 of the Massachusetts Declaration of Rights. *See Frizado v. Frizado,* 420 Mass. 592, 596–97, 651 N.E.2d 1206, 1210 (Mass. 1995).[7] While these cases are not controlling, they are persuasive in their analysis and reasoning—particularly the Western District of Wisconsin's opinion in *Blazel.*

 How much due process that is necessary for a particular situation is not etched in stone. The due process clause is "flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In determining what procedural protections a particular situation demands, a court should weigh three factors: (1) the private interest that will be affected by the *ex parte* process; (2) the risk of erroneous deprivation through the *ex parte* process under attack and the probable value of additional or alternative safeguards; and (3) the interest of the party seeking the *ex parte* remedy with due regard for any ancillary interest the government may have in providing the *ex parte* process or foregoing the added burden of providing greater protections. *See Connecticut v. Doehr,* 501 U.S. 1, 10–11, 111 S.Ct. 2105, 2112, 115 L.Ed.2d 1 (1991) (applying the threefold analysis set forth

---

7. Although *Frizado* does not specifically state that the *ex parte* proceeding authorized by Section 4 provides the procedural safeguards guaranteed by Article 12, this is the reasonable interpretation; footnote 4 of *Frizado* references the burden of demonstrating "a substantial likelihood of immediate danger of abuse" before a judge may enter an *ex parte* temporary restraining order under ch. 209A, § 4. *See Frizado,* 420 Mass. at 593 n. 4, 651 N.E.2d at 1208 n. 4. As such, the Supreme Judicial Court's holding in *Frizado* is of great significance to this case because the due process protections of the Massachusetts constitution are comparable to, if not greater than, those of the federal constitution. *See Commonwealth v. Brown,* 426 Mass. 475, 482, 688 N.E.2d 1356 (Mass.1998) (quoting *Trigones v.*

*Attorney General,* 420 Mass. 859, 864, 652 N.E.2d 893 (Mass.1995)) ("for the purpose of due process analysis, our standard of review under the cognate provisions of the Massachusetts Declaration of Rights usually is comparable to that under the Fourteenth Amendment to the United States Constitution"); *Doe v. Attorney General,* 426 Mass. 136, 144 n. 8, 686 N.E.2d 1007 (Mass.1997) (citation omitted) ("we treat the procedural due process protections of the Massachusetts and United States Constitutions identically"); *Aime v. Commonwealth,* 414 Mass. 667, 681 n. 18, 611 N.E.2d 204 (1993) ("We have on occasion afforded the individual's interest in physical liberty more protection than required by the United States Supreme Court").

in *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902, to situations similar to the instant case in which a private individual is seeking a prejudgment remedy). *See also Penobscot Air Services, Ltd., v. Federal Aviation Administration,* 164 F.3d 713, 723 (1st Cir.1999).

In weighing the three *Mathews/Doehr* factors, it is clear that substantial procedural protections are necessary to protect an alleged abuser from the wrongful deprivation of significant constitutional rights. *See Blazel,* 698 F.Supp. at 763. A Chapter 209A, § 4 *ex parte* temporary restraining order can have a significant effect on both an alleged abuser's property interest in his/her home and an alleged abuser's liberty interest in his/her familial relationship with his/her children. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972) (among the liberty interests protected by the Fourteenth Amendment includes the right to establish a home and bring up children). However, these interests must be weighed against the significant interests of both the petitioner, who has an interest in protecting his/her self, family, and home from abuse, and the state, which has a compelling interest in preventing domestic abuse—particularly any abuse that may be the result of an abused individual seeking protection in the judicial process. *See, e.g., Moore,* 442 U.S. at 434–35, 99 S.Ct. at 2383; *Blazel,* 698 F.Supp. at 763.

█ While the *Mathews/Doehr* framework is helpful in highlighting the competing interests which should be considered, it provides very little guidance as to the specific procedural protections which are necessary in any given situation. *See Blazel,* 698 F.Supp. at 763. Faced with a similar lack of specific guidance under *Mathews,* the federal district court in *Blazel* analyzed the Supreme Court's decisions in creditor repossession cases and concluded

that in the absence of a pre-deprivation hearing due process requires four minimum procedural safeguards. *See id.* at 763–64. The district court concluded that due process is satisfied so long as the *ex parte* process requires: "participation by a judicial officer; a prompt post-deprivation hearing; verified petitions or affidavits containing detailed allegations based on personal knowledge; and risk of immediate and irreparable harm," *Blazel,* 698 F.Supp. at 763–64 (citing *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 607, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant,* 416 U.S. 600, 605–09, 94 S.Ct. 1895, 1899–1901, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 93, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969)). Where these procedural safeguards are present, the risk of an erroneous deprivation of an alleged abuser's rights is outweighed by the combined interests of the petitioner and the state. The district court's analysis and reasoning in *Blazel* is a correct interpretation of the Supreme Court cases on the requirements of the due process clause.[8] As such, this Court adopts the court's reasoning in *Blazel* with regard to the procedural safeguards necessary for a domestic abuse statute, which provides for the *ex parte* issuance of temporary restraining orders, to pass constitutional muster.

Applying the *Blazel* analysis to this case, it is clear that Chapter 209A, § 4 provides all four procedural protections necessary under the due process clause of the Fourteenth Amendment. Only a judge may issue an *ex parte* temporary restraining order under Chapter 209A. *See id.* A prompt post-deprivation hearing must be given to the alleged abuser within ten business days of the issuance of

---

**8.** This Court is not alone in finding the analysis and reasoning in *Blazel* to be correct. *See Eisenbart v. Wisconsin,* 993 F.2d 1549 (Table), 1993 WL 134608 (7th Cir.1993) (unpublished table opinion) (stating that the circuit court would rule in the same manner as the district court did in *Blazel* ).

the *ex parte* order. *See id.* The court may enter a temporary restraining only if the petitioner files a complaint that "demonstrates a substantial likelihood of immediate danger of abuse." Mass.Gen.L. ch. 209A, § 4. *See also* Mass.R.Dom.Rel.P., Rule 65 (requiring the filing of an affidavit or verified complaint before the granting of an *ex parte* temporary restraining order). The standardized complaint form used for Chapter 209A restraining orders specifically requires that the petitioner file an affidavit which describes "in detail" the petitioner's allegations. Furthermore, the petitioner is required to sign under penalty of perjury as to the truthfulness of the affidavit and complaint. Therefore, the *ex parte* proceeding of ch. 209A, § 4, provides all the procedural protections necessary to satisfy the requirements of due process of law.

### Second Amendment Claim

■ The plaintiffs' claim in Count III under the Second Amendment also must be dismissed for failure to state a claim under Section 1983 because the Second Amendment applies only to the federal government and not to the states. *See U.S. v. Cruikshank,* 92 U.S. 542, 553, 2 Otto. 542, 23 L.Ed. 588 (1875); *Thomas v. Members of City Council of Portland,* 730 F.2d 41, 42 (1st Cir.1984) (citing, *Presser v. Illinois,* 116 U.S. 252, 265, 6 S.Ct. 580, 584, 29 L.Ed. 615 (1886) (second amendment confers right as against activity by the "federal government only")). *See also Mayberry v. Rizzo,* No.95–CV–199, 1996 WL 66229, *1 (D.Me.1996) (right to bear arm has never been incorporated into the Fourteenth Amendment's protection of due process) (citing, *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp,* 965 F.2d 723, 730 (9th Cir.1992)).

### CONCLUSION

The Defendants' Motion to Dismiss is granted as to all counts. Counts I and III are dismissed for failing to state a claim under 42 U.S.C. § 1983 because the plaintiffs have failed to allege either state action or a cognizable constitutional deprivation. Count II is dismissed because it constitutes as an action for injunctive relief which is barred by the express language of 42 U.S.C. § 1983.

SO ORDERED.