Torli H. KRUA, Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, President George W. Bush, Michael Chertoff, Janet Napolitano and Tom Ridge, Defendants.

Civil Action No. 09–10081–NMG.

United States District Court,
·D. Massachusetts.

July 28, 2010.

Torli H. Krua, Boston, MA, pro se.

Mark J. Grady, United States Attorney's Office, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

*Pro se* plaintiff Torli Krua ("Krua") brings suit against the United States Department of Homeland Security ("DHS") and various high-ranking executive branch officials for claims arising out of the immigration status of certain Liberian citizens. Before the Court is the government's motion to dismiss and Krua's motion to amend.

### I. *Factual Background*

In 1989, Liberia was plunged into civil war and many citizens fled the country. As a result of the turmoil, in March, 19 91, the United States Attorney General granted all Liberians in this country the opportunity to register for temporary protected ·status ("TPS"). In general, TPS provides temporary protection to foreigners in the United States when unsafe conditions exist in their home countries. By statute, the Attorney General was originally authorized (and now the Secretary of Homeland Security is authorized) to designate a foreign state for TPS in the event of an ongoing armed conflict, a natural disaster or other extraordinary and temporary conditions and thereby allow aliens to remain in this country temporarily. *See* 8 U.S.C. § 1254a(b). Once designated, nationals of that country may apply for TPS and, if it is granted, may remain in the United States during the period of their country's designation. *Id.* § 1254a(a)(1). They may obtain authorization to work but cannot qualify for other benefits such as welfare or food stamps.· Designations last for periods of 6 to 18 months at the end of which the Secretary of Homeland Security re-

views the conditions in the foreign state and determines whether to continue the designation. *Id.* § 1254a(b)(2), (3). When TPS is terminated, individuals return to the immigration status held before TPS was allowed (unless their status changed in the interim). If an individual was an illegal alien previously, therefore, she reverts to that status and is expected to depart or be subject to removal.

Liberia's TPS designation was renewed every year from 1991 until it was terminated in September, 1999. Liberians were, however, spared the usual consequence of such a termination and were allowed to remain in the United States. President Clinton determined that, for foreign policy reasons, they should be protected under a mechanism called deferred enforced departure ("DED"). The effect of DED is essentially the same as TPS and Liberians were eligible for employment authorization and not subject to removal. DED was extended a few times until, in 2002, the government re-designated Liberia as a TPS state.

That most recent TPS designation was effective October 1, 2002 and thus applied to all Liberian nationals living continuously in the United States from that point forward. The designation was renewed several times until, in September, 2006, DHS determined that it was no longer supported by the conditions in Liberia. The designation was scheduled to terminate effective September 30, 2007 but most Liberians have again been afforded ongoing temporary relief. President Bush initially granted them DED and President Obama has renewed the DED grant twice (currently due to expire in September, 2011). DED is, however, only applicable to individuals who were under a grant of TPS in September, 2007 which, in turn, only encompassed Liberians who have continuously resided in the United States since the TPS effective date of October 1, 2002.

The latter distinction is, according to Krua, critical and the basis for his suit. In June, 2003, fighting in Liberia had escalated and President Bush deployed the military to increase security at the embassy and to evacuate American citizens. Krua alleges that several evacuated Americans were children with at least one Liberian parent (e.g., those born while their parents were studying in the United States). Along with those children, the military also evacuated certain Liberian parents. The parents were given temporary visas and, Krua claims, were told by the American embassy that they would be granted TPS upon arrival in the U.S.

Because the original grant of TPS and its subsequent renewals only applied to Liberians living in the United States since October, 2002, however, those Liberian parents have been continuously denied TPS (and presumably their visas have since expired). Their plight has become Krua's crusade for the past seven years. He is a Baptist minister in Boston, Massachusetts and a Liberian refugee himself. He alleges that he helped to welcome airlifted families to Boston in 2003 and, since that time, has cared for them at his church. Without the ability to obtain work authorization, however, the refugee parents are unable to fend for themselves and Krua has spent considerable time on what he calls "motherly tasks" to assist.

Krua is, in the final analysis, outraged by the fact that many Liberians have been afforded protection since 1991 while Liberians airlifted to this country in 2003 to protect their American children are denied those same benefits. He claims that he has exhausted all avenues for administrative relief. In November, 2003, he persuaded both United States Senators and all House Representatives from Massachusetts to co-sign a letter to the Secretary of Homeland Security asking him to extend

TPS to Liberians who arrived after October, 2002. The Secretary apparently was not persuaded by Krua's arguments.

In his motion to amend, Krua also references the recent earthquake in Haiti and the fact that TPS has been afforded only to Haitians in the United States prior to the date of the earthquake. Again, he believes that there should be an exception for Haitian kin who may need to accompany vulnerable American citizens (i.e., the young and the elderly) back to this country.

Krua asks this Court 1) to declare presidential orders granting DED only to certain Liberians as unconstitutional violations of the Equal Protection Clause, 2) to hold defendants liable for "all damages and losses" including expenses incurred by Krua while serving refugees who have been unlawfully denied protected status under 8 U.S.C. § 1254a and 3) to enter an injunction to stop such policies and retroactively compensate the victims for losses suffered.

## II. *Procedural History*

Krua filed his complaint on January 16, 2009. In October, 200 9, the government responded with a motion to dismiss and, on March 9, 2010 that motion was allowed as unopposed. Shortly thereafter, however, the government informed that Court it had received several filings from the plaintiff, including an opposition to its motion to dismiss, which were not properly docketed. Those filings, dated February 25, 2010, were 1) a motion to amend the complaint, 2) a memorandum in support thereof and 3) an opposition to the government's motion to dismiss. The filings have since been properly docketed.

On April 9, 2010, Krua filed what he captioned as another opposition to the government's motion to dismiss. What he actually seeks, however, is reconsideration of the government's motion to dismiss taking into account the arguments presented in his first, previously-undocketed opposition. In light of the plaintiff's *pro se* status, the Court will consider the merits of the government's motion to dismiss, plaintiff's opposition thereto and plaintiff's motion to amend.

## III. *Analysis*

### A. The Government's Motion to Dismiss

#### 1. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir. 2000).

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action. *Id.*

#### 2. Application

Krua seeks monetary and injunctive relief and, although his complaint is obscure, he apparently brings claims for 1) interference with the free exercise of his religion

and religious duties in violation of the First Amendment, U.S. Const., amend. I, 2) violation of the Equal Protection Clause of the Fourteenth Amendment, U.S. Const., amend. XIV, by denying TPS protection to relatives of vulnerable Americans who are similarly situated to Liberians afforded such protection and 3) failing to extend TPS benefits to Liberians who arrived in this country after October 1, 2002 when conditions in Liberia warranted such a designation pursuant to 8 U.S.C. § 1254a(b).

The government moves to dismiss Krua's complaint for 1) lack of subject matter jurisdiction, 2) failure to state a claim upon which relief can be granted and 3) failure to effect proper service. With respect to the first two grounds, defendants contend that judicial review of TPS determinations is statutorily prohibited. Grants of DED are, moreover, matters of "executive grace" undertaken pursuant to the President's power to conduct foreign relations and thus constitute non-justiciable political questions. In any event, defendants argue, the DED determinations do not violate the Equal Protection Clause because the individuals allegedly harmed do not constitute a protected class and engendering disparate treatment based upon whether an individual did or did not hold TPS in September, 2007 was rational. Defendants also argue that Krua, who has not himself been denied TPS or DED, lacks standing to challenge the government actions at issue.

Krua's opposition focuses on his Equal Protection argument. He repeats his contention that similarly situated people should not be treated differently and that defendants drew an arbitrary line with the TPS designation that harms young Americans evacuated with their Liberian parents. He contends that the TPS statute is discriminatory and that there is a compel-

ling government interest in protecting the welfare of American citizens at risk.

The Court will dismiss plaintiff's complaint. With respect to his Equal Protection and statutory claims, Krua is, in the final analysis, challenging the way in which the DHS, Secretaries of Homeland Security and Presidents have administered TPS and DED designations for Liberian citizens by drawing a line at continuous residency beginning on October 1, 2002. That issue and the distinction formulated by executive officials with the expertise and authority to make such determinations is, simply put, not for this Court to upset. TPS determinations are explicitly exempted from judicial review, see 8 U.S.C. § 1254a(b)(5)(A); 8 U.S.C. § 1252(a)(2)(B)(ii), and DED extensions from Presidents Bush and Obama have been explicitly made "pursuant to [their] constitutional authority to conduct the foreign relations of the United States". The Presidents' determinations in that regard are not for this Court to overturn and Krua provides no authority to do so.

Moreover, the kind of line-drawing about which Krua complains appears to be the typical course of action in TPS cases. In particular, when TPS designations are renewed, the ability to register is not generally re-opened to new arrivals. Instead, an individual must be continuously, physically present in the United States from the effective date of the most recent designation (here, October, 2002) to qualify. See 8 C.F.R. § 244.2. That provides additional support for the Court's decision not to interfere with the decisions of DHS and the Presidents.

Although not the focus of any of the papers submitted, Krua's First Amendment challenge also fails. He appears to claim that his time spent assisting refugee families in their daily lives and in their immigration efforts has disrupted his per-

sonal life and interfered with his ministry. The fact that Krua has, through his good graces, voluntarily undertaken the task of assisting certain Liberians, however, in no way establishes that a generally applicable law with respect to immigration unconstitutionally impinges on his right of free exercise of religion.

## B. Krua's Motion to Amend

In his motion to amend, Krua seeks to add 1) President Obama as a party and 2) additional factual allegations. His motion will be denied as moot because such allegations do nothing to resuscitate his claims.

## C. Request for a Stay

Krua's April, 2010 opposition to defendants' motion to dismiss also requests "time to secure adequate legal counsel". The Court will not stay the case because 1) more than three months have passed since that request with no indication of Krua's efforts in that regard and 2) it would be futile.

## ORDER

In accordance with the foregoing,

1) defendants' motion to dismiss (Docket No. 6) is **ALLOWED;** and

2) plaintiff's motion to amend (Docket No. 10) is **DENIED** as moot.

**So ordered.**